669 P.2d 616

**STATE of Arizona, Appellee,**

v.

**Mickey Lynn MAY, Appellant.**

**No. 1 CA-CR 5874.**

Court of Appeals of Arizona, Division 1, Department C.

Aug. 23, 1983.

---

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div., Gary A. Fadell, Asst. Atty. Gen., Phoenix, for appellee.

H.K. Wilhelmsen, Prescott, for appellant.

## OPINION

BROOKS, Judge.

By indictment filed October 1, 1981, appellant Mickey Lynn May was charged with count I, aggravated assault, and count II, attempted aggravated assault. The victim in both counts was appellant's wife, Carol May. He was acquitted on count I, aggravated assault, but was convicted of count II, attempted aggravated assault in violation of A.R.S. § 13–1203(A)(2) and 13–1204(A)(2). Thereafter, he was sentenced to the minimum term of four years imprisonment.[1] On appeal, he presents the following arguments:

1. That count II of the indictment should have been dismissed because attempted aggravated assault is not a crime under Arizona's criminal code;

2. That the trial court prematurely admitted appellant's incriminating statements because the state had not yet established the corpus delicti;

3. That the trial court erred in admitting evidence of appellant's subsequent bad acts;

4. That the trial court erred in denying appellant's requested instruction on attempted threatening or intimidating as a lesser included offense of attempted aggravated assault; and

5. That it was error for the trial court to admit statements made by appellant's sister at the police station that the appellant had gone to his wife's house to kill her.

At trial, Carol May testified that marital difficulties between her and appellant led

1. At the time of sentencing, the trial court erroneously sentenced appellant to four years with the Department of Corrections. We here- by modify the sentence to reflect four years imprisonment in compliance *State v. Gutierrez*, 130 Ariz. 148, 634 P.2d 960 (1981).

to her leaving their Cornville, Arizona, family home on Friday evening, April 24, 1981. She travelled to Phoenix with a friend, Larry Dale Major, where she remained for the weekend to consider whether she should continue with the marriage. On Sunday, April 26, 1981 she returned home and told appellant that she wanted to separate and obtain a divorce. An argument ensued and soon thereafter appellant handed her two letters he had prepared for her parents and his parents. These letters outlined provisions for the May's property and their three children. He then held a pistol to her head, handed her a Bible and told her to read her last rites. He also stated that when he was finished with her, he was going to kill himself. Frightened, Carol May began to calm appellant down by reminding him of their children and stating that maybe they could work things out. Appellant retreated, the parties discussed their difficulties and Mrs. May spent the night at their home although she did explain to appellant that she wanted to leave the next day for a short time to think things out. She took a few clothes with her the next morning and without telling appellant where she would be living, she began staying with Major that Monday evening.

During the next two weeks, appellant made several attempts at reconciliation by contacting his wife at work. During that period, he learned that she was living with Major and even went to Major's house and discussed the matter with him. Finally, in the early evening of May 11, 1981, appellant asked his sister to drive him to Major's house so that he could attempt a reconciliation. A short distance from Major's house, however, appellant's sister became aware that appellant was carrying a gun and she turned her car around explaining to her brother that she was going to the police. He then forced the car to a stop and fled on foot to Major's house carrying the loaded pistol. When he arrived at Major's house, no one was home so he waited in a shed behind the house. In the interim, his sister drove to the police station and described her brother's actions.

Three police officers then went to Major's house and eventually saw appellant sitting in the shed with his head on his knees and sobbing. The officers ordered appellant out of the shed, removed a loaded 44–40 pistol from his waistband, and arrested him. While being handcuffed, appellant stated: "God help me for what I was going to do."

This act of going to the house with a firearm and waiting in the shed with the obvious intent to confront his wife with the weapon led to the charge and conviction of attempted aggravated assault.

In appellant's first argument, he claims that under Arizona's criminal code there is no such crime as attempted assault and therefore no such crime as attempted aggravated assault. This argument springs from statutes incorporating the common law concept of assault—an attempt to commit a battery—and cases finding conceptual difficulty with an attempt to commit an attempt. See, e.g., In re M., 9 Cal.3d 517, 108 Cal.Rptr. 89, 510 P.2d 33 (1973) and cases and articles cited therein.

However, under Arizona's new criminal code, the common law definitions of assault and battery no longer exist. The common law crime of battery is included in the assault statute, A.R.S. § 13–1203(A), which defines assault as follows:

1. Intentionally, knowingly or recklessly causing any physical injury to another person; or

2. Intentionally placing another person in reasonable apprehension of imminent physical injury; or

3. Knowingly touching another person with the intent to injure, insult or provoke such person.

Appellant was charged under subsection 2 which proscribes placing another person in reasonable apprehension of imminent physical injury. See State v. Rineer, 131 Ariz. 147, 639 P.2d 337 (Ct.App.1981). This crime is an act complete in itself and not an attempt to commit a different crime as was common law assault. Thus, the academic arguments of whether criminal sanctions should attach to an attempt to commit an attempt are inapplicable.

Additionally, the subsection of Arizona's attempt statute which is pertinent to this case is A.R.S. § 13–1001(A)(2). In pertinent part, the statute provides that a person commits attempt if such person intentionally does anything which is a step in a course of conduct planned to culminate in the commission of an offense. When appellant went to Major's house armed with a pistol under circumstances inferring that he intended to place Carol May in reasonable apprehension of imminent physical injury, he completed a substantial step in his course and design to culminate in what would amount to an aggravated assault. We find no conceptual difficulty in interpreting the intent of the legislature in these statutes to prohibit and make criminal such conduct.

For his second argument, appellant claims that the trial court erred by admitting incriminating statements made by appellant prior to the state establishing the corpus delicti of attempted aggravated assault. When appellant was removed from the shed and told to lie on the ground, he told the arresting officer "God help me for what I was going to do." Later, he stated on the way to the police station that "she is driving me crazy and I can't take it any more." At the police station during questioning he said he went over there "to end it for the three of them." Finally, when he was asked if he went there to kill anybody, he replied, "No, I had only gone there to talk to them." These statements, along with the statements also made by appellant that "I am a combative man", "I am going to take military action", "My parents will take care of the children", and "I screwed up—there are better ways," were all argued to be incriminating statements in the nature of a confession which should not have been admitted prior to the state establishing the corpus delicti of attempted aggravated assault upon Carol May. Appellant argues that while there may have been a corpus delicti established for attempted homicide, attempted threatening or intimidating, attempted kidnap, assault, or burglary, without these statements there was no inference of attempted aggravated assault.

Appellant is correct that before a confession may be admitted into evidence, the state must produce independent evidence, apart from the confession, sufficient to warrant a reasonable inference that the crime charged was actually committed by some person. *State v. Janise,* 116 Ariz. 557, 570 P.2d 499 (1977). The corpus delicti of attempted aggravated assault, as charged in this indictment, required proof that someone intentionally took a step planned to culminate in intentionally placing Carol May in reasonable apprehension of imminent physical injury.

Prior to the admission of the statements, Carol May had fully described the marital problems between the parties including the incident of April 26, 1981. Appellant's sister had described driving appellant toward Major's house, the struggle that ensued over the pistol and her report to the police. The police officers testified that they found appellant hiding in a shed beside Dale Major's house with a loaded pistol in his waistband. These facts created more than a reasonable inference that appellant had gone to Dale Major's house with the intent to use the weapon to place his wife in reasonable apprehension of imminent physical injury. The act of going to Major's house under the circumstances described was an intentional step planned to culminate in the commission of the crime of aggravated assault and therefore established the corpus delicti of attempted aggravated assault. Thus, the trial court did not err in admitting the statements.

Next, appellant complains that the trial court erred in admitting evidence of subsequent threats made to Carol May and Dale Major by appellant on September 26, 1981. On that date, after a visitation with one of his children at Carol May's residence, appellant held a can of beer approximately four inches from his wife's mouth and said "How would you like to have this shoved down your throat?" He then stated, "I'm going to get you yet. You're dead yet."

Additionally, Mrs. May was permitted to testify that on that same day appellant had threatened to burn her house down and after following her to Major's house had again stated, "You're dead yet. I'm going to get you yet." Major was also permitted to testify that a similar threat was made to him by appellant. Appellant claims that these were subsequent bad acts wholly independent from the charges for which he was on trial and which were offered solely to prove his character and that he acted in conformity therewith and were inadmissible under Rule 404(a), Arizona Rules of Evidence. However, as noted by the state, subsequent bad acts may be admitted for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. *See* Rule 404(b). Appellant's intent at the time he went to Major's house on May 11, 1981 was a critical issue at trial. Appellant denied any intent to threaten his wife and testified that he merely carried the weapon to protect himself from Major. These subsequent threats could be reasonably construed to reflect a continuing attitude on appellant's part to keep his wife in a state of fear of imminent physical injury by him with the intent to break up the relationship with Major and have her return to him out of fear. Thus, they were relevant to his intent at the time he went to Major's house on May 11, 1981 and were properly admitted.

For appellant's fourth argument, he claims that the trial court erred in denying his requested instructions on attempted threatening or intimidating as a lesser included offense of attempted aggravated assault.[2]

Appellant recognizes that both *State v. Morgan,* 128 Ariz. 362, 625 P.2d 951 (Ct. App.1981) and *State v. Rineer,* 131 Ariz. 147, 639 P.2d 337 (Ct.App.1981) have held that threatening and intimidating is not a lesser included offense of aggravated assault. Nevertheless, he claims that the present case may be distinguished from *Morgan* and *Rineer* because of the added element of attempt.

In *Morgan,* as in the present case, the defendant had been charged with assault under A.R.S. § 13–1203(A)(2). This subsection of the statute states that a person commits assault by "intentionally placing another person in reasonable apprehension of imminent physical injury..." In contrast, the crime of threatening or intimidating is defined in A.R.S. § 13–1202(A) as follows:

A. A person commits threatening or intimidating if such person *with the intent to terrify* threatens or intimidates by word or conduct:

1. To cause physical injury to another person or serious damage to property of another; or
2. To cause, or in reckless disregard to causing, serious public inconvenience including, but not limited to, evacuation of a building, place of assembly or transportation facility.

(Emphasis added.) In holding that threatening and intimidating is not a lesser included offense of aggravated assault, this court focused on the above emphasized language and its requirement that the defendant must possess an intent to place the victim in a mental state of terror in anticipation of the threatened harm. We concluded that this element is not required to convict a defendant of aggravated assault

2. The tendered instructions were as follows:
A person commits the crime of threatening or intimidating if such person with the intent to terrify threatens or intimidates by word or conduct to cause physical injury to another person.
The crime of attempted aggravated assault includes the lesser [sic] serious crime of attempted threatening or intimidating. The State may prove attempted threatening or intimidating, but fail to prove the more seri-

ous crime of attempted aggravated assault. You are permitted to find the defendant guilty of the less serious crime of attempted threatening or intimidating:
1. If the evidence does not show beyond a reasonable doubt that the defendant is guilty of attempted aggravated assault; and
2. If the evidence does show beyond a reasonable doubt he is guilty of attempted threatening or intimidating.

under A.R.S. § 13–1204(A)(2) where it is only necessary that the defendant intentionally place the victim in reasonable apprehension of imminent physical injury. We further noted that while an assault may in fact terrify a victim, the offense does not require that the defendant intend to evoke such terror. In *Rineer*, Division 2 disagreed with our reasoning in *Morgan* but reached the same result. It held that in the crime of threatening and intimidating the defendant must imply some control over the occurrence or nonoccurrence of the harm, an element which is not necessary to satisfy the crime of aggravated assault.

In the present case, appellant argues that our holding in *Morgan* is inapplicable to the present case because in the crime of attempted assault or attempted threatening and intimidating, the defendant's subjective concern with the victim's mental state is so speculative that the distinguishing element no longer exists.

While it is certainly true that a defendant's subject intent is difficult to determine where an attempt is involved, this is merely a factual issue and does not provide a legal distinction. The crime of attempt requires proof of a specific intent by the defendant to commit the substantive crime. *State v. Miller*, 123 Ariz. 491, 600 P.2d 1123 (Ct.App.1979). Thus, to prove the defendant guilty of attempted threatening or intimidating the state would have been required to prove not only the commission of an act planned to culminate in the offense of threatening or intimidating but also the intent to complete that crime with all its constituent elements. This includes the intent to place the victim in a state of terror in anticipation of the threatened harm. This element is not required to prove the crime of attempted aggravated assault. The latter merely requires an act designed to place the victim in reasonable apprehension of imminent physical injury. Thus, appellant's argument that the elements of attempt to commit aggravated assault necessarily include the elements of attempt to commit threatening or intimidating is not persuasive.

In determining whether an offense is a lesser included crime, however, we must not only look to the elements of the crimes but to the terms of the charging document. If the terms of the charging document describe the lesser offense, it is considered an included crime even though the lesser offense would not always form a constituent part of the greater crime charged. *See, State v. Teran*, 130 Ariz. 277, 635 P.2d 870 (Ct.App.1981). Count II of the indictment stated:

On or about May 11, 1981 MICKEY MAY attempted to commit the offense of aggravated assault by carrying a loaded 44–40 pistol to the residence of Larry Dale Major and lying in wait while concealed for the purpose of using a deadly weapon or dangerous instrument, to intentionally place Carol May in reasonable apprehension of imminent physical injury, in violation of A.R.S. §§ 13–1001, 13–1204(A)(2) and (B), 13–1203(A)(2), 13–701, 13–702 and 13–801.

This language follows the statutory language of aggravated assault. It charges that appellant attempted to commit aggravated assault by going to Major's house with a deadly weapon with the intent to use that weapon to intentionally place the victim in reasonable apprehension of imminent physical injury. In order to charge attempted threatening or intimidating it would have been necessary to allege that appellant went to the residence while armed with a deadly weapon with the intent to terrify the victim by threatening or intimidating by word or conduct to cause physical injury. Under the language of count II, the jury could have found appellant guilty of attempted aggravated assault if they determined that he carried the pistol partially for his own protection but also intended to display the weapon in his belt in such a manner as to intentionally place Carol May in reasonable apprehension of imminent physical injury. This would not have constituted the crime of attempted threatening or intimidating which would have required a finding of threatening or intimidating by word or conduct to cause physical

injury to another person with the intent to terrify Carol May. Thus, even under the language of the charging document, the crime of attempted threatening or intimidating was not a lesser included offense and therefore the requested instruction was properly denied.

Finally, appellant argues that it was error for the trial court to permit the investigating officers to testify as to statements made by appellant's sister regarding her fear or belief that appellant had gone to his wife's house to kill her.

As mentioned earlier, when appellant's sister, Tamara Drake, drove appellant toward Major's house on May 11, 1981, an argument erupted between the two prior to reaching the house after Tamara saw that appellant was carrying a gun. When appellant left the car, Tamara drove directly to the police station which was only two or three blocks away. During the state's direct examination at trial, she testified that when she arrived at the station:

I told the lady that I needed to see an officer, something, that he had a gun and he was going to his wife's boyfriend's, I guess, to get his wife.

I told them he had a gun and that he went over to get his wife.

The prosecutor then asked:

Q. Did you say that you were afraid Mickey was going to kill Carol?

A. No, I did not ever mention kill, because I really didn't think he was going to kill her.

On cross-examination, appellant's counsel elicited the following additional testimony from Tamara:

Q. In connection with Mickey getting out of your vehicle and leaving, did he say what he was going to do?

A. All he said he just said don't worry, I just want to talk to her.

Q. Is that compatible with what you had said earlier—I mean what he had said to you earlier at your house?

A. That's all he ever said at the house, and there both, he said he just wanted to talk to her.

Q. But he did have a gun at that point when he says, "I just want to talk to her."

A. When he got out of the car, yes.

Later, over appellant's hearsay objection, the state presented testimony by two officers who were present when Tamara arrived at the police station. Officer Ingraham testified:

She stated that her brother had a gun and he was on his way to his wife's house, and she was afraid that he was going to kill her.

Officer O'Donnal testified:

Okay. As I remember, she said my brother has a gun and he is going to kill his wife.

The state offered this testimony as impeachment of Tamara's earlier statements and also as an excited utterance under rule 803(2), Arizona Rules of Evidence. The trial court apparently admitted the testimony by the officers as excited utterance hearsay exceptions. On appeal, appellant claims that it was error to admit the police officers' statements in that they were irrelevant, prejudicial statements of Tamara's state of mind. In its answering brief, the state does not dispute that the testimony was irrelevant, but claims that the error in admitting these statements was harmless and therefore does not require reversal citing *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

■ We agree that the statements were improperly admitted. In *State v. Adamson,* 136 Ariz. 250, 255, 665 P.2d 972, 977 (1983), our supreme court reiterated that "[t]here is also a general requirement imposed on declarations coming in under all exceptions to the hearsay rule that the declarant, like witnesses, must have had an opportunity to observe or personal knowledge of the fact declared." Here, Tamara's statements to the police officers that she was afraid or believed that appellant was going to kill his wife reflected mere suspicion on her part that appellant possessed the intent to kill his wife and were not based upon any personal knowledge of the

fact by the witness. Therefore, the statements were improperly admitted as exceptions to the hearsay rule.

Nevertheless, we agree with the state that reversal is not required because we find, beyond a reasonable doubt, that even without this testimony, the jury's verdict would have been the same. *Id.; State v. McVay,* 127 Ariz. 450, 622 P.2d 9 (1980). The statements were cumulative to similar statements made by appellant and previously admitted in evidence. Additionally, the state's theory of the case was not that appellant went to the residence to kill the victim but to merely place her in reasonable apprehension of imminent physical injury.

For the reasons stated, the judgment and sentence are affirmed as modified.

JACOBSON and OGG, JJ., concur.