720 P.2d 100

**STATE of Arizona, Appellee,**

v.

**Harold Arthur ANGLE, Appellant.**

**No. 1 CA–CR 8506.**

Court of Appeals of Arizona, Division 1, Department C.

Dec. 31, 1985.

Robert K. Corbin, Atty. Gen. by William
J. Schafer III, Chief Counsel, Crim. Div.,

Barbara A. Jarrett, Asst. Atty. Gen., Phoenix, for appellee.

Chester R. Lockwood, Jr., Prescott, for appellant.

## OPINION

CORCORAN, Judge.

The appellant, Harold Arthur Angle (defendant), was charged with three counts of aggravated assault while armed with a deadly weapon in violation of A.R.S. §§ 13-1203(A)(2), 13-1204(A)(2) and (B). The trial judge instructed the jury with respect to these charges and also, over defendant's objection, gave instructions on the lesser included offenses of attempted aggravated assault. The court refused a request from the defense to instruct on disorderly conduct as a lesser included offense. The jury found the defendant guilty of three counts of attempted aggravated assault and he was sentenced to concurrent terms of imprisonment on each count.

Defendant has couched three of his issues on appeal in terms of error for failure to grant a judgment of acquittal, failure to grant a new trial, and error in instructing on the lesser included offenses. Since each turns upon the sufficiency of the evidence to sustain convictions for aggravated assault or attempted aggravated assault, we will analyze the case in terms of the sufficiency of the evidence. We will then proceed to the question of whether the court erred in failing to give instructions for disorderly conduct as lesser included offenses of aggravated assault.

### 1. *Facts*

The evidence presented at trial, considered in a light most favorable to sustaining the verdict, established that several days before the incident in question defendant's wife had defendant transported by ambulance to the Veteran's Administration Hospital. Defendant had, shortly before this, been in a motorcycle accident and also had a history of epileptic seizures. He stayed at the Veteran's Administration Hospital overnight and was released. After he arrived home, defendant's wife heard him speaking angrily in the bedroom. She testified that he appeared upset and began looking for ammunition. Defendant and his wife kept a number of rifles and pistols in their home.

Mrs. Angle continued to ask the defendant what was wrong while he proceeded to look through drawers and closets for approximately 15 minutes for the ammunition. After his wife gave him the ammunition, Angle continued to appear upset and told her that he was leaving. He tried to put his boots on, but she removed them, at one point hitting him in the back with one of the boots. Angle reacted, saying: "Nobody touches me and nobody hurts me." He followed his wife into the living room and pointed a rifle at her. She grabbed the rifle and they fought over it. During the struggle, he told his wife that anybody that hurts him, "is asking for it." Defendant's wife, at some point, fell backwards and hit her head on a table. Angle pointed the gun at her but then put the gun down.

Subsequently, defendant went into the kitchen, kicked a chair over, and began looking in cabinets for his medication. His wife gave him the medication, and he stated, "I've just had it with all this, I have had it with everything, I am going to get a divorce and I'm leaving." He walked into the living room and tore things off the wall and threw things around in that room. He then proceeded into the bedroom where he took all his clothes out of the closet and threw them in the living room. He then threw items in the bedroom, and ripped the telephone out of the wall. Finally, he took a gun and put it to his chin and shut his eyes. His wife grabbed the gun, and it went off.

Mrs. Angle, taking the gun, ran to a neighbor's house yelling for help. The defendant followed her into the neighbor's house where a woman took the gun away from defendant's wife. The defendant left the neighbor's house and the police were called.

When Officers Reed and Davis arrived, they found the defendant standing in the doorway of his home loading a rifle. He

told Officer Reed that he had a fight with his wife, and he walked out of the house saying that he was not going to be arrested. He had a .45 caliber pistol in his right hand and a hand grenade in his left hand. He did not point the pistol at the officers. Officer Reed attempted to talk defendant into putting the weapons down. Defendant stated that he would not be arrested and that he would use the hand grenade and take the officers with him.

Officer Reed continued to speak with defendant and talked him into putting the gun down. The officer continued the conversation and defendant put down the hand grenade. He then walked towards the officers. A search of his person revealed a knife in a sheath inside his right boot and an ammunition belt around his waist. The officers took the defendant into protective custody and transported him first to the hospital and then to jail. He told the officers enroute that he was going to kill himself because he had nothing to live for. Officer Nordyke arrived at the hospital and told defendant he would be arrested for assault. When he heard this Angle said that he should have killed the officer when he had the chance. Defendant was released from the hospital and Officer Reed transported him to the jail. He told Officer Reed during the trip that he was going to kill his wife when he got out of jail.

2. *Aggravated Assault on the Officers*

■ Defendant contends the trial court abused its discretion in denying his motion for a judgment of acquittal on the charge of aggravated assault. Rule 20(a), Arizona Rules of Criminal Procedure, provides that the trial court may grant a motion for a judgment of acquittal, "if there is no substantial evidence to warrant a conviction." "Substantial evidence" is evidence that reasonable persons could accept as adequate to support a conclusion of a defendant's guilt beyond a reasonable doubt. *State v. Edwards*, 136 Ariz. 177, 186, 665 P.2d 59, 68 (1983).

Defendant contends that the evidence fails to establish that he committed the offenses of aggravated assault on Officers Reed and Davis. Defendant was charged with a violation of A.R.S. §§ 13–1203(A)(2) and 13–1204(A)(2). Under these statutes, a person commits an aggravated assault by, "intentionally placing another person in reasonable apprehension of imminent physical injury," A.R.S. § 13–1203(A)(2), by use of a deadly weapon or a dangerous instrument. A.R.S. § 13–1204(A)(2). It is the gist of Angle's argument, based primarily upon testimony elicited from the police officers on cross-examination, that the incident only rose to a "potential for assault." Officer Reed testified as follows:

Q And when he walked out he had the gun in the right hand?

A Yes.

Q Grenade in the left hand?

A Yes.

Q And I believe you told me he never moved them except to put them down, did he?

A They were moved, but not—no great distance, no.

Q Well, he never made a pointing or threatening gesture?

A No, sir.

Q Or took aim, or took back with the grenade, did he?

A No, sir.

Q And he followed every order you gave him, didn't he?

A After awhile he did, yes.

Q Didn't you tell me yesterday that he followed every order you gave him?

A Yeah, within time, after talking to him, he did, yes.

Q You went slow just because that's what you're trained to do in that situation?

A Yes.

Q And as he put them down he didn't point them at you, did he?

A No, sir.

Q As you explained the situation to us, the man walked out of the house at your request, is that correct?

A No, he came out on his own.

Q  Well, you called to him, called in there, identified yourself, and said, "What's the problem," didn't you?

A  Yes, sir.

Q  And he walked out, isn't that correct?

A  He did.

Q  And when he walked out, he didn't rush you?

A  No, sir.

Q  And he didn't do any of those other gestures, then, that I mentioned with those weapons, is that correct?

A  That's correct.

Q  And he put both of those weapons down?

A  He did.

Q  And then you directed him to come toward you?

A  I did.

Q  And he did.  Did he attempt to assault you then?

A  He did not.

Q  Did he attempt to get away from you or do anything?

A  No, sir.

Q  Resist you in any manner?

A  No.

Q  And didn't you tell him you weren't there to arrest anybody?

A  I believe I recall stating I was trying to find out what was going on at that time.

. . . .

Q  And you didn't tell him, then, he was under arrest, did you, or that you were going to arrest him?

A  No, sir.

Q  And you asked him to put down the guns, didn't you?

A  That is correct.

Q  And he did it, didn't he?

A  Yes.

Q  When did he assault you?

A  The assault occurred when he came out and had that—the potential there for the assault is there.  It doesn't take very long to drop a handgun from the raised position and pull the trigger.

Q  Was that it?

A  That is basically it, yes.  The threat, or the action that he made, and he made the threat that he would, yes.

The other officer, Davis, testified:

Q  What act of assault did he make upon you?

A  He was endangering us with the grenade.

Q  He was endangering you maybe with the grenade being there, but what affirmative act did he do attempting to assault you?

A  In that case, nothing, there.

Q  Where was the assault, then?

A  The assault was to his wife.

Q  Well, are you aware that he is charged with three counts of assault?

A  Yes.

Q  On you?

A  I did not make the charges of assault against myself and Officer Reed.

Q  You, yourself, Officer Davis, honestly have a doubt whether he intended to assault you and Officer Reed, don't you?

A  I cannot testify that—no, I think he very much could have pulled the pin on that.

Q  Okay.  He could have.  But you have a doubt whether he actually did intend to assault you, don't you?

A  I don't have any doubt at the time.  At the time, I was very—

Q  Then, why, if you thought he was assaulting you with a live grenade, and he was going to let it go, why didn't you guys draw your guns and blow him away before he could pull the pin?

A  Because he did not put his arm across.  If he had reached across—

Q  So he didn't make the act of assault.  Isn't that correct?

What you're saying, you thought he might?

A  I thought he might, yes.  I was very much aware that he would.

Q  And if Officer Reed said there was the potential for the assault, would you agree that's what it was?

A  Yes, sir.

Q  But that's different than the actual assault, isn't it?

A  Yes.

■ The essence of the defendant's argument is that no assault occurred on the officers because they were not really in apprehension of imminent physical injury. There is no doubt that one element of the offense under A.R.S. § 13–1203(A)(2) is that the victim actually be in reasonable apprehension. *Appeal in Juvenile Action J–78539–2*, 143 Ariz. 254, 256, 693 P.2d 909, 911 (1984); *State v. May*, 137 Ariz. 183, 186, 669 P.2d 616, 619 (App.1983); *State v. Rineer*, 131 Ariz. 147, 148–49, 639 P.2d 337, 338–39 (App.1981); *see also State v. LaMere*, 621 P.2d 462 (Mont.1980); *People v. Harkey*, 69 Ill.App.3d 94, 25 Ill.Dec. 487, 386 N.E.2d 1151 (1979). The aggravated assault statute, unlike A.R.S. § 13–1902, which defines robbery as the taking of property by threat or force with the intent to coerce surrender of or prevent resistence to the taking of the property, applies a subjective standard to the element of the victim's reasonable apprehension. We deduce this from the plain language of the statute, the interpretation that courts in other states have put upon similar statutes, and the comments of the drafters of our code. *Compare* Arizona Criminal Code Comm'n Report, *Arizona Revised Crim. Code* at 187 (1975), which discusses the elimination of the element of fear from the crime of robbery, with the comment on assault found at 135 of the report. Nothing in the latter supports the conclusion that the victim of an assault need not actually be in apprehension of imminent physical injury. The reason for the requirement, as discussed in *State v. LaMere, supra,* is that when a victim is placed in apprehension he is apt to be provoked into a breach of the peace.

■ When fear or apprehension are elements of an offense, testimony of the victim that he was actually afraid or apprehensive is not required; that element of the crime can be established by circumstantial evidence. *State v. Spencer*, 109 Ariz. 500, 501, 513 P.2d 140, 141 (1973); *People v. Harkey, supra.* Taken as a whole, the evidence here would support the conclusion that the defendant intentionally placed the officers in reasonable apprehension of imminent physical injury.

While the defendant's counsel did a good job of cross-examination, the facts, and not the officer's legal conclusion as to what constitutes the law of assault, are what is important. Here, although the officers may have manifested some doubt as to whether they had been assaulted, Officer Reed said, in testimony elsewhere in the record, that the defendant's actions caused him concern for his own well being. Officer Davis said he thought the defendant very well could have pulled the pin on the grenade and that he had no doubt at the time that the defendant intended to actually assault him.

Defendant contends, however, that the psychiatric evidence presented by the defense through the testimony of Dr. Bendheim established a lack of criminal intent on his part. Although Dr. Bendheim testified that in his opinion defendant had suffered a psychomotor seizure prior to the incident, Dr. Bendheim also stated that defendant could have been lying about his loss of memory and that defendant had attempted to fool him concerning the extent of his disability. The evidence concerning whether defendant acted intentionally was in dispute and raised a question of fact for the jury to decide. Reasonable minds could differ on the inferences to be drawn from the evidence concerning defendant's intent and under such circumstances, it would have been error for the trial court to grant a motion for a judgment of acquittal. Rule 20(a); *State v. Just*, 138 Ariz. 534, 545, 675 P.2d 1353, 1364 (App.1983); *State v. Latino*, 25 Ariz. App. 66, 540 P.2d 1285 (1975). We conclude that the trial court did not err in denying defendant's motion for a judgment of acquittal.

3.  *Aggravated Assault on the Wife*

■ Except for his argument on the element of intent, defendant virtually con-

ceded that the evidence would support a conviction for aggravated assault on his wife. Defendant pointed a gun at his wife and although he turned it over to her when she said, "Harold, I love you. Whatever is wrong, we'll try to figure out what is wrong. Please don't." She testified that as all this was going on, "I was so upset, I didn't know whether I was going to faint or throw up...." She also testified that when her husband fired the gun into the floor that she was frightened. This is more than sufficient to constitute aggravated assault.

### 4. Attempted Aggravated Assault on the Officers

■ Defendant also contends that the evidence will not support a conviction for attempted aggravated assault on the officers. The jury was instructed on this as a lesser included offense over defendant's objection.

A lesser included offense instruction is improper if the state of evidence is such that the defendant can only be guilty of the crime charged or not at all. *State v. McNair*, 141 Ariz. 475, 482, 687 P.2d 1230, 1237 (1984). If the evidence does not support a conviction for a lesser included offense, the trial court should not invite the jury to speculate or compromise by giving lesser included offense instructions that are not rationally supported by the evidence. *Amin v. State*, 695 P.2d 1021, 1028 (Wyo.1985). In order for a conviction on a lesser included offense to be rationally supported by the evidence, there must be "some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and ... the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." *State v. Jacobs*, 194 Conn. 119, 126–29, 479 A.2d 226, 230–31 (1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 963, 83 L.Ed.2d 968 (1985), *quoting State v.*

*Whistnant*, 179 Conn. 576, 427 A.2d 414 (1980).

To convict defendant of aggravated assault in this case, the state would have to prove that Angle (1) intentionally, (2) placed the police officers in reasonable apprehension of imminent physical injury, (3) by use of a dangerous weapon. The use of the weapon was not in dispute. As to intent, if the jury found Angle had no intent to commit the assault, they could not have convicted him of the attempt, because intent is an element of attempt. Thus, the only way a jury could have convicted Angle of attempted aggravated assault on the officers was if they determined the two police officers were not in reasonable apprehension of imminent physical injury.

In this case, defendant attempted, as noted above, to demonstrate that the police officers were not in reasonable apprehension of imminent injury. While the jury could have believed that the officers were apprehensive, it was not compelled to accept that view of the evidence. By disputing whether the officers were apprehensive, defendant opened the door to an attempt instruction.

### 5. Attempted Aggravated Assault on Wife

■ As to defendant's wife, except for the defense that Angle was acting under a psychomotor seizure which might negate the element of intent, the defense virtually conceded that an assault occurred. Defendant, who had been engaging in an extended course of highly unpredictable behavior, pointed a gun directly at his wife. He also fired shots into the floor and the wife testified to the degree to which she was upset and frightened during the course of the episode. Nonetheless, the wife's testimony could have led a reasonable jury to doubt whether she was in apprehension of imminent injury.

Many of the wife's actions during the incident could be viewed as inconsistent with apprehension of imminent injury. For example, she had several opportunities to flee the house during the episode, but did not do so until after the defendant tried to

kill himself, which could lead a jury to believe that she did not become apprehensive until Angle tried to injure himself, and that she was never actually afraid that Angle would injure her. Her actions when Angle fired two shots at the bedroom floor could be viewed as inconsistent with the element of apprehension of imminent bodily injury. Instead of fleeing in terror or communicating fear to her husband after he fired the shots, she berated him for firing a gun in the house, and testified that she was worried about damage to the floor. Finally, the jury could have found that the wife's having returned defendant's guns to him after he was disarmed and presented no danger to her was inconsistent with apprehension of injury. In other words, if the wife was apprehensive of injury when defendant pointed a gun at her, why did she later, after having disarmed him, give the guns back to him?

In short, although there was substantial evidence that the wife was in reasonable apprehension of imminent bodily injury, there was some evidence which would permit the inference that she was not. As long as there is some evidence which could lead a reasonable jury to acquit on the greater offense but convict on the lesser, an instruction on a lesser included offense is proper. *State v. Jacobs*, 194 Conn. at 126–29, 479 A.2d at 230–31; *see also* A.R.S. § 13–110. Since the jury could have found that Angle intended to assault his wife but failed because she was not apprehensive of injury, the instruction on attempted aggravated assault was proper.

### 6. *Refusal to Instruct on Disorderly Conduct by Reckless Display of a Firearm*

■ Defendant argues that the trial court erred in refusing to give the requested instruction for disorderly conduct by reckless display of a firearm. We conclude that the trial court did not err because reckless display of a firearm is not a lesser included offense of aggravated assault. A.R.S. § 13–2904(A)(6) provides:

A person commits disorderly conduct if, with intent to disturb the peace or quiet of a neighborhood, family or person, or with knowledge of doing so, such person: ... [r]ecklessly handles, displays or discharges a deadly weapon or dangerous instrument.

In order to be convicted of disorderly conduct, a person must have an intent to disturb the peace or quiet of a neighborhood, family or person. The intent to disturb is not an element of the offense of aggravated assault with a deadly weapon. *State v. Flores*, 140 Ariz. 469, 474, 682 P.2d 1136, 1141 (App.1984). Moreover, to be convicted of disorderly conduct, there must be a reckless handling, display or discharge of a deadly weapon or dangerous instrument. Aggravated assault requires only the use of a deadly weapon or a dangerous instrument.

Finally, we note that assault is a personal offense whereas disorderly conduct is an offense against the public order. Since the two statutes were intended to protect different interests, disorderly conduct is not a lesser included offense of assault. *See Parham v. City of Opelika*, 412 So.2d 1268, 1269 (Ala.Cr.App.1982); *State v. Pickering*, 317 N.W.2d 926, 927 (S.D.1982) (involving kidnapping rather than assault). We thus conclude that the defendant was not entitled to the requested instruction.

### 7. *Juror Misconduct*

■ Defendant also urged in his motion for a new trial that he did not receive a fair and impartial trial on the ground that the jurors reached their verdict by lot because they were confused by the allegedly numerous and misleading jury verdict forms. Defendant did not object to the verdict forms submitted to the jurors and has therefore waived his argument that the verdict forms were improper. Rule 21.3(c), Arizona Rules of Criminal Procedure provides:

No party may assign as error on appeal the court's giving or failing to give any instruction or portion thereof or to the submission or the failure to submit a form of verdict unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to

which he objects and the grounds of his objection.

Nevertheless, defendant argues, based on a comment made by a juror after the trial, that the jury was confused by the verdict forms. One juror stated, "you gave us a bucket of worms, it wasn't fair, this wasn't right, there were too many jury verdict forms." He also contends that notes jurors sent during deliberations indicate their confusion. The jurors asked whether they could find defendant not guilty by reason of insanity on one count but guilty of aggravated assault on two counts, then the jury considered the possibility of a hung jury. He concludes, based on these factors, that the jury decided the case by lot. We disagree.

While the jurors may have had some difficulty in sorting out the issues in this case, it is clear that they reached a unanimous verdict which was fully supported by the evidence. Neither the trial court nor this court may inquire into the subjective motives or mental processes that led a juror to reach a verdict. *State v. Snowden*, 138 Ariz. 402, 404, 675 P.2d 289, 291 (App. 1983). A jury's verdict must stand in the absence of a record revealing that any misconduct took place during the jury's deliberations. *State v. Rose*, 121 Ariz. 131, 140, 589 P.2d 5, 14 (1978). In this case, there is no evidence that the jurors engaged in any misconduct during their deliberations. We find that the trial court did not err in denying defendant's motion for a new trial.

### 8. *Excessive Sentence*

██ Defendant finally urges that the trial court abused its discretion in sentencing him to serve concurrent presumptive terms of six years' imprisonment. The trial court is required to impose the presumptive sentence absent aggravating or mitigating circumstances sufficient to warrant the imposition of a greater or lesser term than the presumptive. A.R.S. § 13–702(C); *State v. Archuleta*, 124 Ariz. 222, 224, 603 P.2d 114, 116 (App.1979).

The trial court stated on the record the reasons that it concluded a presumptive sentence was appropriate in this case. The trial court told defendant that he had considered the nature and circumstances of the case, and found that defendant had used a deadly weapon, had threatened the infliction of serious physical injury not only on the officers, but also in the presence of his wife, and had fired a weapon. The defense had argued that defendant should receive a mitigated term because he did not have a prior felony record and because his ability to appreciate the wrongfulness of his acts was impaired by his medical problems and drug abuse. It is clear that the trial court considered the mitigating circumstances and found them to be outweighed by the aggravating factors which the trial court found to be true. The trial court then imposed presumptive terms of imprisonment. The trial court was not required to enter a finding as to any mitigating circumstances on which it did not rely. *State v. Cawley*, 133 Ariz. 27, 29, 648 P.2d 142, 144 (App.1982). It is abundantly clear that the trial court considered the arguments raised by defense counsel and rejected them. We conclude that the trial court did not err in imposing the presumptive terms of imprisonment.

The judgments and convictions are affirmed.

EUBANK, J., concurs.

KLEINSCHMIDT, Judge, dissenting:

I respectfully dissent from the conclusion of the majority that the crime of disorderly conduct by reckless display of a firearm could not be, under the facts of this case, a lesser included offense of aggravated assault. I agree with the majority in all other respects.

A requested instruction on a lesser included offense is proper only if the lesser offense is composed of some but not all of the elements of the greater crime so that it is impossible to commit the greater, without committing the lesser offense, and if the evidence supports an instruction on the lesser offense. *State v. Celaya*, 135 Ariz. 248, 251, 660 P.2d 849, 852 (1983). In determining whether it is impossible to com-

mit the greater offense without committing the lesser, a court should look to both the statutes and to the charging instruments. *State v. Ennis*, 142 Ariz. 311, 314, 689 P.2d 570, 573 (App.1984).

In this case, Angle was charged with aggravated assault under A.R.S. §§ 13–1203(A)(2) and 13–1204(A)(2) and requested an instruction on disorderly conduct by reckless display of a deadly weapon under A.R.S. § 13–2904(A)(6). The two elements of aggravated assault as charged were 1) intentionally placing a person in reasonable apprehension of imminent bodily injury by 2) use of a deadly weapon or dangerous instrument. The necessary elements of disorderly conduct under A.R.S. § 13–2904(A)(6) are 1) intentionally or knowingly disturbing a person's peace or quiet, by 2) recklessly displaying a deadly weapon or dangerous instrument. I believe that Angle could not have committed aggravated assault without necessarily committing disorderly conduct by reckless display of a firearm.

In *State v. Flores*, 140 Ariz. 469, 474, 682 P.2d 1136, 1141, (App.1984), Division Two of this court held that disorderly conduct is not a lesser included offense of aggravated assault because intent to disturb, an element of the lesser offense, is not a necessary element of the greater offense. I believe, however, that as a matter of common sense it is impossible to put a person in reasonable apprehension of imminent bodily injury without also disturbing that person's peace or quiet. *See State v. Roberts*, 7 Ohio App.3d 253, 455 N.E.2d 508, 509 (1982). As the majority points out, some courts which have held that disorderly conduct is not a lesser included offense of aggravated assault have done so on the theory that the former is an offense against the public order whereas the latter is an offense against the person. *See Parham v. City of Opelika*, 412 So.2d 1268, 1269 (Ala.Cr.App.1982) and *State v. Pickering*, 317 N.W.2d 926, 927 (S.D.1982). As noted in *Roberts*, that distinction is highly metaphysical and really ought not surmount the clear similarity between disturbing a person's peace of mind and putting a person in apprehension of imminent physical injury.

The state contends that the requested lesser included offense instruction was properly refused because disorderly conduct under A.R.S. § 13–2904(A)(6) requires proof of reckless use of a deadly weapon while aggravated assault requires proof of the mere use of a deadly weapon. I disagree. The indictment against Angle clearly states that he intentionally placed his wife and the officers in reasonable apprehension of imminent bodily injury by using a deadly weapon. Thus for Angle to have been convicted of aggravated assault, the state would have had to prove that Angle intentionally used a deadly weapon to place the victims in reasonable apprehension of imminent bodily injury. Proof of intentional use of a deadly weapon is sufficient to prove the reckless use of one. A.R.S. § 13–202(C), states: "If acting recklessly establishes an element, that element is established if a person acts intentionally or knowingly." Thus reckless display of a deadly weapon is included in aggravated assault cases, such as this one, when the assault, and hence the aggravated assault, could not have taken place but for the intentional use of a deadly weapon.

Having shown that it would have been impossible to prove aggravated assault in this case without also proving disorderly conduct by reckless display of a firearm, it is necessary to inquire if the evidence would support such an instruction. As to the officers, the evidence is clear. As the majority points out, there was a dispute as to whether the officers were in reasonable apprehension of imminent bodily injury. It is possible that the jury could have found that the officers were not in apprehension of imminent bodily injury but were merely disturbed, and that the defendant knew this or that all he intended to do was disturb their peace and quiet.

As to the wife, it is possible that a jury could have found that the defendant did not intend to put her in apprehension of imminent physical injury but merely intend-

ed to disturb her, or, perhaps what is equally reasonable, that he had no intent to either put her in apprehension of injury or to disturb her but merely continued his course of disorderly conduct knowing he was disturbing her, which would be enough to support a conviction under A.R.S. § 13-2904(A)(6). The jury should have been instructed on disorderly conduct with respect to the disturbance of the defendant's wife's peace and quiet.

What happened here would certainly support a conviction for aggravated assault or for attempted aggravated assault. But it is by no means beyond the range of possibility that the irrational and frustrated defendant, in a prolonged fit of high dudgeon, recklessly brandished weapons knowing that he was disturbing the peace of others without intending to place them in apprehension of immediate bodily injury. The jury should have had a chance to consider whether this was the case.

I would reverse and remand for a new trial.