NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

JOHN ALBERT MULTARI, *Appellant*.

No. 1 CA-CR 13-0474

FILED 2-26-2015

---

Appeal from the Superior Court in Maricopa County
No. CR2012-006354-001
The Honorable Cynthia J. Bailey, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Adele G. Ponce
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Louise Stark
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Margaret H. Downie delivered the decision of the Court, in which Judge Patricia K. Norris and Judge Randall M. Howe joined.

---

**D O W N I E**, Judge:

¶1   John Albert Multari appeals his convictions and sentences for aggravated assault, unlawful discharge of a firearm in city limits, and unlawful discharge of a firearm at a non-residential structure. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY[1]

¶2   Multari fired a shot into the front driver's-side window of a Volkswagen at about 9:30 p.m. in a residential neighborhood. The bullet shattered the window and hit the dashboard and front windshield but missed the driver. The driver, R.C., left the area and called 9-1-1.

¶3   Police officers drove R.C. back to the scene, and he identified Multari, who had returned to the neighborhood in a different vehicle, as the person who had been circling the area in a Toyota Corolla and who ran toward R.C.'s vehicle right before shooting at it. That night, Multari denied firing his gun. He also initially denied owning the Corolla. When confronted with the registration information, Multari admitted owning the Corolla, but stated it was inoperative. After questioning and a gunshot residue swab of his hands, Multari was released.

¶4   Gunshot residue tests on Multari's hands came back positive, and tests on a shell casing found at the scene established it had been fired by Multari's gun. Multari was arrested and interrogated three weeks after the incident. At that time, he admitted firing his gun at the Volkswagen, but said he did so because he feared R.C. was going to steal his car while he approached R.C.'s vehicle on foot. At trial, Multari testified he fired the shot into the driver's-side window because R.C. sped toward him as he approached the car on foot, and he thought R.C. was going to run over him.

---

[1] We view the trial evidence in the light most favorable to sustaining the jury's verdicts. *See State v. Nelson*, 214 Ariz. 196, 196, ¶ 2, 150 P.3d 769, 769 (App. 2007).

Although Multari testified he shot at the car as he was jumping out of its way "in one motion," he also testified that when he shot at the car, it was no longer coming at him. He testified he aimed for the car and intended to cause bodily injury to the driver.

**¶5** The jury convicted Multari of the charged offenses, and the court imposed concurrent sentences, the longest of which was 7 years. Multari filed a timely notice of appeal. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and 13-4033(A).

## DISCUSSION

### A. Disorderly Conduct Instruction

**¶6** Multari argues the superior court erred by denying his request for an instruction on disorderly conduct as a lesser included offense of the charged aggravated assault offense because the jury could have found he fired the gun intending only to disturb R.C.'s peace. We assume, without deciding, that Multari sufficiently preserved this argument for appellate review by citing *State v. Angle*, 149 Ariz. 478, 720 P.2d 79, (1986), in requesting the instruction.[2] We review the denial of a requested instruction for abuse of discretion. *See State v. Wall,* 212 Ariz. 1, 3, ¶ 12, 126 P.3d 148, 150 (2006).

**¶7** As charged in this case, aggravated assault requires proof that the defendant intended to place the victim in reasonable apprehension of imminent physical injury, using a deadly weapon. *See* A.R.S. § 13-1203(A)(2) ("A person commits assault by . . . [i]ntentionally placing another person in reasonable apprehension of imminent physical injury."); -1204(A) (A person commits aggravated assault "[i]f the person uses a deadly weapon."). In pertinent part, disorderly conduct requires proof that the defendant "with intent to disturb the peace or quiet of a . . . person, or with knowledge of doing so, such person . . . recklessly . . . discharges a deadly weapon." A.R.S. § 13-2904(A)(6). Disorderly conduct by recklessly discharging a firearm with intent to disturb the peace is a lesser included offense of aggravated assault as charged in this case. *State v. Miranda*, 200 Ariz. 67, 68, ¶ 3, 22 P.3d 506, 507 (2001); *Angle*, 149 Ariz. at 479, 720 P.2d at 80.

---

[2] In settling jury instructions, Multari argued R.C. was not placed in reasonable apprehension because of the handgun, but rather his peace was disturbed by Multari's crossing the street and flashing his cell phone at R.C.

¶8            However, a court is required to instruct and provide verdict forms only on "necessarily included offenses." *See Wall,* 212 Ariz. at 3, ¶¶ 13-14, 126 P.3d at 150; *see also* Ariz. R. Crim. P. 23.3 ("Forms of verdict shall be submitted to the jury for all offenses necessarily included in the offense charged. . . ."). "An offense is necessarily included when it is lesser included and the facts of the case as presented at trial are such that a jury could reasonably find that only the elements of a lesser offense have been proved." *State v. Gipson,* 229 Ariz. 484, 486 n.2, ¶ 14, 277 P.3d 189, 191 n.2 (2012). "To determine whether there is sufficient evidence to require the giving of a lesser included offense instruction, the test is whether the jury could rationally fail to find the distinguishing element of the greater offense." *State v. Jackson,* 186 Ariz. 20, 27, 918 P.2d 1038, 1045 (1996).

¶9            No jury could have reasonably found that Multari intended only to disturb R.C.'s peace, in light of his admission that he fired a shot through the driver's-side window intending to injure the driver. Nor could a reasonable jury have found only that R.C.'s peace was disturbed and that he was not placed in reasonable apprehension of imminent physical injury, as required to prove the greater offense. *See State v. Angle*, 149 Ariz. 499, 504, 720 P.2d 100, 105 (App. 1985), *vacated in other part,* 149 Ariz. 478, 479, 720 P.2d 79, 80 (1986).

¶10           R.C. testified he was so frightened by Multari's conduct that he drove away "as fast as [he] could" and called 9-1-1. R.C. was covered in glass, had blood on his hand, and the window of his car had a large hole in it. Based on this evidence, as well as Multari's admission he intentionally shot through the driver's-side window, no reasonable jury could have failed to find that R.C. was placed in reasonable apprehension of imminent physical injury. *See State v. Lara*, 183 Ariz. 233, 235, 902 P.2d 1337, 1339 (1995) (given defendant's "relentless and deadly" attack on the officer, "it is not possible the jury could have found that [the officer] was only disturbed," and thus, evidence did not support disorderly conduct instruction). The superior court did not abuse its discretion by denying Multari's request for a disorderly conduct instruction.

B.     **Alleged Prosecutorial Misconduct**

¶11           Multari contends the prosecutor engaged in misconduct by suggesting he claimed for the first time at trial that he fired the shot in self-defense. The cross-examination to which Multari objects for the first time on appeal was as follows:

Q: And now here we are in trial and here we are with story number three, which you've never told any officer before. This is the first time we're hearing this today and that's that [R.C.] tried to run you over; is that correct?

. . .

Q: Sir, that's not my question. Today's the first day that anyone from the State is hearing that someone tried to run you over; is that correct?

. . .

Q: You didn't tell the officer, did you? Officer Redding?

. . .

Q: You didn't tell Detective Perkins[?]

. . . .

Q: That's right. Story number three was he tried to run you over. I see. And you expect this jury to believe today that after all those chances you had to talk to the police, after all those chances you had to tell the officers that someone threatened your life and ran you over, today you expect them to believe that story; is that right?

Also for the first time on appeal, Multari objects to the prosecutor's statement in closing argument that he "didn't tell anyone that [R.C.] tried to run him over until he came in this courtroom today," and "he told you self-defense for the very first time," and "it's just not true."

¶12        Multari argues the prosecutor knew from pretrial proceedings that he was claiming self-defense on the basis that R.C. tried to run him over and asserts the prosecutor engaged in impermissible vouching by stating "she had never before heard [Multari's] self-defense claim before his testimony, thereby making it clear that she personally knew that he was lying, as she personally knew that he'd never made the claim before." Because Multari did not raise these objections below, we review only for fundamental error. *See State v. Henderson,* 210 Ariz. 561, 568, ¶ 22, 115 P.3d 601, 608 (2005). Multari bears the burden of demonstrating that misconduct occurred, the misconduct constituted fundamental error,

and that he was prejudiced thereby. *Henderson*, 210 Ariz. at 567, ¶ 20, 115 P.3d at 607.

¶13        To determine whether a prosecutor's remarks are improper, we consider whether they called to the attention of jurors matters they would not be justified in considering, and the probability, under the circumstances, that jurors were influenced by the remarks. *State v. Jones*, 197 Ariz. 290, 305, ¶ 37, 4 P.3d 345, 360 (2000). There are "two forms of impermissible prosecutorial vouching: 1) where the prosecutor places the prestige of the government behind its witness; [and] 2) where the prosecutor suggests that information not presented to the jury supports the witness's testimony." *State v. King,* 180 Ariz. 268, 276-77, 883 P.2d 1024, 1032-33 (1994). "To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Morris*, 215 Ariz. 324, 335, ¶ 46, 160 P.3d 203, 214 (2007). "Prosecutorial misconduct constitutes reversible error only if (1) misconduct exists and (2) a reasonable likelihood exists that the misconduct could have affected the jury's verdict, thereby denying defendant a fair trial." *Id.*

¶14        We find no misconduct based on the prosecutor's references to a self-defense claim being raised for the first time at trial. In considering whether an argument constitutes misconduct, we consider "the context in which the statements were made." *State v. Nelson*, 229 Ariz. 180, 189, ¶ 39, 273 P.3d 632, 641 (2012). We will not assume the prosecutor intended the most sinister meaning of ambiguous remarks. *State v. Dunlap*, 187 Ariz. 441, 462-63, 930 P.2d 518, 539-40 (App. 1996). The prosecutor's questions and comments focused on Multari's failure to tell police officers who questioned him that he believed R.C. was trying to run him over. Multari has not denied the accuracy of that assertion. Indeed, at trial, he testified he did *not* tell officers that R.C. tried to run him over, saying, "I kind of wanted to keep all of that from the officer."

¶15        Nor are we persuaded the prosecutor improperly suggested to jurors that she had personal knowledge outside the record that Multari was lying. The prosecutor argued the jury should not believe his claim of self-defense for many reasons: because it was Multari's third story; because neither the physical evidence, common sense, nor his own testimony supported the claim; because he lied; and because he was the only witness with a motive to lie. It was only in the context of detailing the reasons for disbelieving the self-defense assertion that the prosecutor remarked Multari's story was "not true." Because the prosecutor sufficiently linked

her remarks to the evidence and emphasized that the jury was the sole judge of credibility, we conclude no improper vouching occurred. *See State v. Corona*, 188 Ariz. 85, 91, 932 P.2d 1356, 1362 (App. 1997); *cf. United States v. Ruiz*, 710 F.3d 1077, 1086 (9th Cir. 2013) (holding that use of "we know" was proper because it was used "to marshal evidence actually admitted at trial and reasonable inferences from the evidence, not to vouch for witness veracity or suggest that evidence not produced would support a witness's statements").

**CONCLUSION**

**¶16** For the foregoing reasons, we affirm Multari's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama