625 P.2d 951

**STATE of Arizona, Appellee,**

v.

**Gail (Toby) MORGAN, Appellant.**

**No. 1 CA–CR 4474.**

Court of Appeals of Arizona,
Division 1,
Department C.

Feb. 10, 1981.

Rehearing Denied March 19, 1981.

Robert K. Corbin, Atty. Gen., by William J. Schafer, III, Chief Counsel, Criminal Division, and Barbara A. Jarrett, Asst. Atty. Gen., Phoenix, for appellee.

Theodore C. Jarvi, Scottsdale, for appellant.

## OPINION

O'CONNOR, Judge.

Appellant was convicted of one count of assault with a deadly weapon or dangerous instrument in violation of A.R.S. §§ 13–1203(A)(2) and 13–1204(A)(2) and (B), following a trial by jury. She was sentenced to serve five years in the Arizona State Prison. She timely filed her notice of appeal and raises five issues for our consideration: 1) whether she was entitled to instructions on the offenses of threatening or intimidating, and endangerment, as lesser included offenses of assault; 2) whether she was denied a speedy trial; 3) whether the prosecutor improperly commented upon her refusal to testify in closing argument; 4) whether the prosecutor improperly misstated the evidence during his closing argument and the court erred in failing to provide a curative instruction to the jury; 5) whether the trial court erred in admitting into evidence a pistol and bullets found at the scene of the offense.

The trial testimony reveals that on May 5, 1979, Pat Pirkle, a witness in the case, visited Jeanette Schuerman. Ms. Schuerman was a friend of appellant and was living in a rental unit attached to appellant's home. When Ms. Pirkle arrived at Ms. Schuerman's residence, appellant was visiting with Ms. Schuerman. She left soon after Ms. Pirkle's arrival. Sometime after midnight, as Ms. Pirkle and Ms. Schuerman were watching television, Ms. Pirkle heard Ms. Schuerman's dog suddenly begin barking in the bedroom. Ms. Pirkle went to the bedroom window and observed a figure standing outside. As the figure revealed itself, Ms. Pirkle could see that it was the appellant and that she was armed with a gun. Appellant demanded to speak to Ms. Schuerman. Ms. Pirkle testified at trial that she refused to allow Ms. Schuerman to come to the window and that she continued to speak with appellant for approximately 15 minutes. Ms. Pirkle further testified that appellant threatened to use the gun unless Ms. Schuerman came to the window.

After denying appellant's demands, Ms. Pirkle turned from the window and took approximately two steps to the doorway of the room when she heard a gun being fired.

Ms. Pirkle and Ms. Schuerman called the police, who investigated the scene and discovered a bullet hole through the window and screen near the place appellant had been standing. According to the investigating officer's testimony at trial, a bullet apparently entered through the window in front of which appellant was standing and exited through a second window in the bedroom. The officers apprehended appellant riding a bicycle in front of her home. They also found a pistol wrapped in a towel in a box on a closet shelf in a bedroom of the house where appellant was living. Finally, appellant told the officers where to find some bullets which she had dropped and which were identified as being of the same caliber as the gun found in the bedroom of the residence.

## INSTRUCTIONS ON THREATENING OR INTIMIDATING AND ENDANGERMENT

For appellant's first claim of error, she argues that the trial court erred in failing to instruct the jury that the offenses of threatening or intimidating (A.R.S. § 13–1202) and endangerment (A.R.S. § 13–1201) are lesser included offenses of aggravated assault, as contended by appellant at trial. The trial court refused to give either of appellant's requested instructions and gave only an instruction on simple assault as a lesser included offense of aggravated assault.

Our discussion of this issue and our holding herein is limited solely to the offense charged in this case, namely aggravated assault in violation of A.R.S. § 13–1204(A)(2). We do not address the issue of whether endangerment or threatening or intimidating is a lesser included offense of either simple assault or aggravated assault as defined by any of the remaining provisions of A.R.S. § 13–1203 or A.R.S. § 13–1204.

■ A criminal defendant is entitled to instructions on any lesser included offense of the offense charged where the evidence supports the giving of such an instruction. *State v. Dugan*, 125 Ariz. 194, 608 P.2d 771 (1980). "An offense is lesser included when the greater offense cannot be committed without necessarily committing the lesser offense." *Id.* at 195, 608 P.2d at 772. Thus, if the offense alleged to be a lesser offense has an element in addition to and separate from the elements of the offense which is asserted to be greater, it is not a lesser included offense.

The question of whether the offenses of threatening or intimidating and endangerment are lesser included offenses of aggravated assault is one of first impression in Arizona. The new statutes defining those offenses are based on the Model Penal Code, §§ 211.2 through 211.3. A number of states have similar statutes. *E. g.*, Oregon Revised Statutes § 163.195; New York Penal Law § 120.20; Texas Penal Code § 22.05. However, there are few cases from other jurisdictions addressing the issue. *See*, however, *People v. Miller*, 69 Misc.2d 722, 330 N.Y.S.2d 925 (1972); *Gallegos v. State*, 548 S.W.2d 50 (Tex.Cr.App.1977).

## ENDANGERMENT

■ "A person commits endangerment by recklessly endangering another person with the substantial risk of imminent death or physical injury." A.R.S. § 13–1201(A). The comments of the Criminal Code Commission indicate that the offense supplements the law of criminal attempt by adding a provision for reckless actions. *Arizona Revised Criminal Code Commission Report* at 134 (1975). The statute is designed to cover "situations where the actor's recklessness endangers another's well being without the actor technically intending or knowing he is doing so." R. Gerber, *Criminal Law of Arizona* at 163 (1978). According to the Commission, conduct punishable under the statute would include such actions as "recklessly discharging firearms in public, pointing firearms at others, obstructing public highways or abandoning

life-threatening containers which are attractive to children." *Arizona Revised Criminal Code Commission Report* at 134 (1975). It is thus clear, both from a reading of the statute and from the Commission's comments, that one of the required elements of endangerment is that the victim must be placed in actual substantial risk of imminent death or physical injury. There is no requirement that the victim be aware of the conduct of the actor.

 The elements of aggravated assault which are pertinent to this case are set forth in A.R.S. § 13–1203(A)(2) and § 13–1204(A)(2). They require that the actor intentionally place "another person in reasonable apprehension of imminent physical injury" using a deadly weapon or other dangerous instrument. A deadly weapon may be an unloaded gun. A.R.S. § 13–105(9) and (12). Aggravated assault pursuant to A.R.S. § 13–1204(A)(2) may, therefore, be committed by using an unloaded gun, and it is easy to imagine situations in which the assault could be committed without placing the victim in actual risk. Thus, it is not a necessary element of aggravated assault that the victim be in actual substantial risk of imminent death or physical injury. All that is required is that the victim be in reasonable apprehension of physical injury. Endangerment is therefore not a lesser included offense of aggravated assault as defined in A.R.S. § 13–1204(A)(2), and appellant was not entitled to an instruction on the offense of endangerment as a lesser included offense.

## THREATENING OR INTIMIDATING

Appellant argues additionally that she was entitled to a jury instruction on the offense of threatening or intimidating in violation of A.R.S. § 13–1202(A)(1) as a lesser included offense of aggravated assault. A.R.S. § 13–1202(A)(1) provides:

A person commits threatening or intimidating if such person with the intent to terrify threatens or intimidates by word or conduct: (1) To cause physical injury to another person. . . .

The Criminal Code Commission's comments indicate that the statute was designed to proscribe "threats that cause serious alarm for personal safety" on the ground that "[p]eople who are attempting to avoid what they believe to be immediate serious harm may often take action so precipitous as to harm themselves." *Arizona Revised Criminal Code Commission Report* at 135 (1975). The comments point out that while the defendant may be found guilty of a more serious offense if actual harm does result, the statute authorizes conviction for "the inchoate threat".

 The elements of threatening or intimidating are: (a) intent to terrify, (b) threatening or intimidating by word or conduct, (c) to cause physical injury to another. "Terrify" is defined in Webster's Third New International Dictionary (1966) as "to fill with terror: frighten greatly," and "terror" is defined as "a state of intense fright or apprehension: stark fear." "Apprehension" is defined as "anticipation especially of unfavorable things: suspicion or fear especially of future evil." Appellant argues that the intent required for threatening or intimidating is the same as that required for assault, asserting that there is no appreciable distinction between terror and apprehension. Appellant's argument misses the point, because the distinction between threatening or intimidating and aggravated assault lies not in the victim's mental state, but in the defendant's subjective concern with the victim's mental state. To be found guilty of threatening or intimidating, the defendant must intend to fill the victim with intense fright; in other words, the defendant must subjectively and specifically intend that the victim's mental state be one of terror. By contrast, to be found guilty of assault under A.R.S. § 13–1204(A)(2) the defendant need only intentionally act using a deadly weapon or dangerous instrument so that the victim is placed in reasonable apprehension of imminent physical injury. In other words, the defendant must intend to do the act, and the victim must react with apprehension, but the defendant need not have any subjective concern whatever for the victim's

mental state. While an assault, especially an aggravated assault, may terrify a victim, the offense does not require that the defendant intend to evoke terror in the victim. Therefore, threatening or intimidating in violation of A.R.S. § 13–1202(A)(1) is not a lesser included offense of aggravated assault as charged here in violation of A.R.S. § 13–1204(A)(2). Appellant was thus not entitled to an instruction on the offense of threatening or intimidating as a lesser included offense.

## SPEEDY TRIAL

Appellant next contends that she was denied her right to a speedy trial by virtue of various continuances that were granted by the trial court. The case proceeded from initial appearance to trial as follows: appellant's initial appearance occurred on May 6, 1979, and her arraignment occurred on June 6, 1979. Appellant was not in custody and therefore she was required to be brought to trial within 120 days from her initial appearance or 90 days from her arraignment, whichever was greater. *State v. Rose*, 121 Ariz. 131, 589 P.2d 5 (1978); rule 8.2(c), Arizona Rules of Criminal Procedure. In this case, the greater period was 90 days from the arraignment, and the last day for trial was thus September 4, 1979. Appellant moved for a continuance which was granted on August 23, 1979, and the new last day for trial thus became October 2, 1979. Rule 8.4(a), Arizona Rules of Criminal Procedure. On September 18, 1979, the State moved for a 14–day continuance in order to subpoena the victims, who were residing in Colorado at the time. The trial court granted the continuance and ordered that none of the days were to be excluded. Thus the last day for trial remained October 2, 1979. Appellant did not object to the continuance. Finally, on October 2, 1979, the State again moved for a continuance because it had been unable to secure the appearance of the two victims. At the hearing on the motion to continue, the State presented evidence that it had made a good faith and diligent effort to obtain the out-of-state witnesses. The State showed that it had promptly mailed the subpoenas

to Colorado but that they were delayed in the post office because they showed an incorrect zip code. Appellant objected to the continuance and moved for dismissal based on an alleged violation of her right to a speedy trial. The trial court determined that extraordinary circumstances existed and granted the State a 16–day continuance to October 18, 1979. The matter proceeded to trial on October 18, 1979.

It is clear in Arizona that the granting or denial of a motion for continuance is within the sound discretion of the trial court and that such a ruling will not be reversed on appeal unless it is shown that the trial court has abused its discretion so as to result in prejudice to the defendant. *State v. Blodgette*, 121 Ariz. 392, 590 P.2d 931 (1979). Certain time periods are properly excludable when determining speedy trial limits. Those include delays occasioned by or on behalf of the defendant pursuant to rule 8.4(a), and delays mandated by extraordinary circumstances where such delay is indispensable to the interests of justice. Rule 8.5(b), Arizona Rules of Criminal Procedure. We find the trial court did not abuse its discretion in this instance by finding that extraordinary circumstances existed to justify the continuance and that the delay was indispensable to the interests of justice. We find that the time was properly excluded, and that the matter proceeded to trial within the time limits required by rule 8.

Finally, appellant claims that she was prejudiced by the failure of the State to produce both of the out-of-state witnesses at trial. The Colorado witnesses were the victims, Pat Pirkle and Jeanette Schuerman. Ms. Pirkle complied with the subpoena and ultimately testified at trial. However, a hearing was held in Colorado regarding the subpoena of Jeanette Schuerman, and the Colorado court found that compliance with the subpoena would have resulted in undue hardship for her. Thus, she did not appear at trial. However, we fail to see how appellant was prejudiced by the failure of Ms. Schuerman to appear as a

witness in this case. Appellant was originally charged with two counts of aggravated assault, one pertaining to each victim. At the close of the State's case, the trial court dismissed Count One of the charge which alleged an assault on the absent victim, Jeanette Schuerman.

Furthermore, as the trial court pointed out, approximately a week prior to trial, trial counsel for appellant received word that the witness Schuerman would not testify in the case. At that time appellant had the opportunity to take the witness' deposition in Colorado if she wanted to preserve her testimony. Having actual notice that the witness would not appear at trial, appellant nevertheless failed to initiate the procedures necessary to preserve the witness' testimony for trial. Under the circumstances, we find that appellant has failed to show that the trial court abused its discretion in granting the State's motion for a continuance or that she was prejudiced thereby.

### COMMENTS ON SILENCE

For her third issue on appeal, appellant claims that the prosecutor committed reversible error in his closing argument by commenting on her failure to testify in her own behalf. In the State's rebuttal argument, the prosecutor made the following statements:

> Mr. Jarvi decried the explanation of some of the facts. *And although the defense can elect to produce no evidence; that, they did. The facts here have been presented and they are the State's evidence.* And the evidence does, when taken with fair inferences, prove beyond a reasonable doubt that the defendant, Toby Morgan, committed the offense of aggravated assault with a deadly weapon. [emphasis added]

Immediately following the statement, defense counsel moved for a mistrial, which was denied.

Appellant argues that the remarks were made for the purpose of emphasizing her refusal to testify. Additionally, she asserts that she was the only person other than Ms.

Pirkle who could have testified as to the facts of the offense.

A comment by a prosecutor upon the failure of the defendant to testify violates the defendant's fifth amendment privilege against self-incrimination. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Such comments also violate Art. 2 § 10 of the Arizona Constitution and A.R.S. § 13–117(B). However, not all such comments are improper. Only comments which actually direct the jury's attention to the failure of the defendant to testify are impermissible. *State v. Arredondo*, 111 Ariz. 141, 526 P.2d 163 (1974). "To be constitutionally proscribed, a comment must be adverse; that is, it must support an unfavorable inference against the defendant and, therefore, operate as a penalty imposed for exercising a constitutional privilege." *State v. Mata*, 125 Ariz. 233, 238, 609 P.2d 48, 53 (1980). *See also Lakeside v. Oregon*, 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978).

In the instant case, an examination of the context in which the remark was made reveals that it did not raise an unfavorable inference against the defendant. In her own closing argument, appellant had reminded the jurors that she had not taken the witness stand and admonished them not to draw an unfavorable inference against her because of her failure to testify. The prosecutor's comments did no more than restate what defense counsel had already argued, that is, that the defendant produced no evidence. In addition, the comment does not focus the jury's attention on the failure of the defendant to testify. The appellant was not the only person who could have explained or contradicted the evidence. Jeanette Schuerman was also present at the residence at the time of the offense, and the jury was not aware that she was unavailable to testify. *State v. Still*, 119 Ariz. 549, 582 P.2d 639 (1978). We find, therefore, that the comment did not support an unfavorable inference against the appellant for her exercise of her constitutional privilege against self-incrimination.

## PROSECUTOR'S CLOSING ARGUMENT

Appellant next claims that the prosecutor made critical misstatements of fact in his closing argument, and that the trial court erred in failing to give the jury a suitable cautionary instruction. At trial, Kevin Davis, the investigating officer, testified that he found a gun, which appeared to have been fired recently, in a bedroom closet in the residence where appellant lived. He also testified that appellant asked him if he would like to know where the bullets to the gun were. She had told him that she had placed the bullets in her underwear and they had scattered around the yard surrounding the residence. However, the State was unable to prove conclusively at trial that the gun which was found in the bedroom closet was the gun used by appellant to commit the offense.

In closing argument, the prosecutor stated as follows:

> Later at the police station, she told Officer Kevin Davis that she had placed. the cartridges, shells *for the gun* in her underwear and apparently they had fallen out as she was leaving the scene. [emphasis added]

Counsel for appellant objected to the statement and moved for a mistrial. The trial court denied the motion, but told the prosecutor to make it clear he was not quoting from the evidence. When the prosecutor resumed his argument, he cautioned the jury as follows:

> Now, I would point out to you that in indicating what the defendant said to Officer Davis that I was paraphrasing my understanding or intent of the statement and was not intending to quote the defendant exactly, and I'm not sure that even the testimony indicated an exact quote of her words.

Appellant claims that the cautionary statement of the prosecutor did nothing to cure the taint left by his previous remarks. She also claims that the prosecutor erred in making the following statements during his rebuttal argument:

> And then we have the defendant, Toby Morgan, while down at the police station, saying: "You want to know where the bullets are?" Bullets to what? First, what do bullets go to? They go to guns. "You want to know where the bullets are? I put them in my underwear and they dropped out as I was leaving." The officer goes back and he finds .38 caliber bullets.

 Counsel is permitted considerable latitude in closing argument, including the right to draw reasonable inferences from the evidence. *State v. Jaramillo*, 110 Ariz. 481, 520 P.2d 1105 (1974). In the instant case, the implication that the bullets which were found on the lawn belonged to the gun which was found in the closet was a reasonable inference to be drawn from the evidence, and was thus proper argument. Additionally, the jury was instructed that arguments of counsel were not evidence. We find no error.

## ADMISSION OF PISTOL AND BULLETS

 Finally, appellant argues that the trial court erred in admitting into evidence the gun found in the closet and the bullets in the yard. Appellant argues first that the State failed to lay a proper foundation prior to admitting the gun. She asserts that the State failed to prove that the gun which was found in the closet was the gun used by appellant in the commission of the crime. She also argues that the bullets were admitted without proper foundation linking them to the gun or to the incident.

 We disagree. The gun which was seized was in a bedroom closet in the residence where appellant lived. Officer Davis testified that it appeared to have been fired recently. The gun thus became an additional piece of circumstantial evidence used to complete the story of the crime. Additionally, at trial, appellant objected to the admission of the gun on the ground that it was immaterial and irrelevant, rather than upon the ground that an improper foundation had been presented. Thus, as to the admissibility of the gun, appellant has failed to preserve the issue for purposes of

this appeal. *United States v. Markham*, 440 F.2d 119 (9th Cir. 1971).

■ The bullets were seized as a result of appellant's statements to the police indicating that the bullets could be found on the lawn near the house. When the officers searched the premises, they found the bullets which were ultimately introduced into evidence. At trial, appellant objected to the admission of the bullets on the ground that they had not been sufficiently identified. Even if such an objection could be construed as an objection on the ground that the prosecutor failed to establish a proper foundation, we do not believe that the trial court abused its discretion in allowing the bullets to be admitted. We find that the investigating officer's testimony did provide sufficient foundation for the admission of the bullets. Her argument that they were not sufficiently identified by the officer goes to the weight of the evidence and not to its admissibility. *State v. Blazak*, 114 Ariz. 199, 560 P.2d 54 (1977); *State v. Mays*, 7 Ariz.App. 90, 436 P.2d 482 (1968).

■ Appellant also asserts that the pistol and bullets should have been suppressed as the "fruit of a poisonous tree." Prior to trial, appellant filed a motion to suppress the admission of certain statements made by her to the police officers. The motion was granted. She contends that the pistol and bullets were seized as a result of the statements which had been suppressed. Appellant did not move to suppress the pistol and the bullets prior to trial. Moreover, at the time their admission was sought at trial, appellant did not object on the grounds that they were the fruit of her previously suppressed statements. Appellant has thus waived this issue for appeal. *State v. Marahrens*, 114 Ariz. 304, 560 P.2d 1211 (1977).

For the foregoing reasons, the judgment and sentence are affirmed.

OGG, J., and YALE McFATE, Judge (Ret.), concur.