735 P.2d 757

**STATE of Arizona, Appellee,**

v.

**Florentino Reyes SANTANNA,
Appellant.**

**No. CR 86–0010.**

Supreme Court of Arizona,
In Banc.

March 4, 1987.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III and John B. Barkley, Asst. Attys. Gen., Phoenix, for appellee.

William J. Redondo, Tucson, for appellant.

CAMERON, Justice.

Defendant Florentino Reyes Santanna was tried and convicted of first degree

murder, A.R.S. §§ 13–1105, –703, –710, and sentenced to life imprisonment without possibility of parole for 25 years. He appeals. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. §§ 13–4031, –4035.

We must answer the following questions on appeal:

I. Did the trial court improperly exclude evidence regarding the victim's prior arrests and convictions for violent behavior?

II. Was the defendant denied his right to effective assistance of counsel by the failure of trial counsel

a) to raise the issue of self-defense, and

b) to raise the issue of intoxication?

### FACTS

During the afternoon of 3 March 1985, the victim, Jorge Gonzalez, was baptized in a religious ceremony in Tucson. Defendant and his wife were the victim's godparents. After the ceremony, a barbecue was held to celebrate the event. Following the barbecue, defendant, his wife, the victim, and Roberto Pintado, a friend, continued celebrating at a nearby Elks lodge.

Later, the celebration moved to a downtown bar, called "The Stop". A bartender from The Stop twice observed defendant and the victim arguing outside the bar. Defendant was yelling, "That's my girl" and "I want my bitch". According to the bartender, "girl" and "bitch" are terms also used for drugs and cocaine. The bartender also testified that defendant dropped a gun while in the bar, although defendant denied that he had possessed a gun that evening.

At the bar, Pintado and the victim danced with and bought drinks for several women. One of the women, nicknamed Cookie, asked Pintado if he had some cocaine. Around 11 p.m., defendant took his wife home and returned to The Stop. Later, defendant drove the victim, Pintado, Cookie, and two of her friends to Cookie's apartment near 22nd Street and Craycroft.

After arriving at the apartment complex, defendant took a gun from under the driver's seat and began shouting angrily in Spanish. Initially, Pintado attempted to calm the defendant but without success. The victim then wrestled with the defendant for the gun. The victim challenged the defendant to fight with him. Defendant and Pintado then returned to the defendant's car. Before defendant could drive away, the victim jumped into the vehicle.

While defendant drove, the victim started arguing again. Finally, defendant pulled on to a dirt road and stopped. Both the victim and defendant got out of the car. Pintado testified that the defendant fired 4 or 5 shots, two at the victim. A nearby resident heard 5 shots fired at 12:30 a.m., 4 March 1985. The police later found five shell casings, four near the body and one further away.

At trial, Pintado testified that after the shooting, defendant drove to the apartment of his friend, Barbara Arndt, and asked her to keep an athletic bag, which contained the gun, allegedly a sawed-off .30 carbine. Pintado later collected the gun from Ms. Arndt. After exchanging hands several times, the gun came into the possession of defendant's sister-in-law who buried it in a local landfill. The gun never was recovered.

Defendant told police that the victim had left The Stop before he did, that he had not gone to Cookie's apartment, and that he had not driven the victim's car to San Francisco the day following the murder.

At trial, defendant testified that he had lied to the police as to these matters. Defendant also testified that he did not kill the victim. Defendant claimed that after leaving Cookie's apartment, he dropped the victim off at another bar and Pintado at his house, before returning home by 11:30 p.m. The defendant denied leaving the gun with Ms. Arndt.

### I.

### EXCLUSION OF EVIDENCE

The state moved in limine to preclude the admission of evidence concerning

prior bad and violent acts by the victim. Defense counsel made an offer of proof by calling the victim's parole officer from San Francisco and a police officer from Novato, California. They testified to the victim's prior conviction for assault with a deadly weapon and several arrests for misdemeanor-type offenses, some involving violent behavior.

Although defendant originally disclosed the defense of self-defense, during argument on the motion in limine defense counsel conceded that "my defense as to my client is not self-defense." The trial court granted the motion in limine precluding the prior bad acts evidence because it was not relevant to defendant's "I didn't do it" defense. We agree.

■ An accused may offer proof of the victim's reputation for violence when a claim of self-defense is raised. *State v. Zamora,* 140 Ariz. 338, 341, 681 P.2d 921, 924 (App.1984); *State v. Birdsall,* 116 Ariz. 196, 568 P.2d 1094 (App.1977). *See* R.Evid. 404(a)(2), 17A A.R.S. Where the defendant does not claim self-defense nor does the evidence show that the victim was the initial aggressor, the violent character of the victim is not relevant and such character trait evidence is not admissible. *State v. Wussler,* 139 Ariz. 428, 432, 679 P.2d 74, 78 (1984).

Admittedly, specific acts of violence by the victim would be admissible if known to the defendant in order to prove the defendant's state of mind but only if such state of mind is relevant. *State v. Dalglish,* 131 Ariz. 133, 639 P.2d 323 (1982); *State v. Zamora,* 140 Ariz. at 341, 681 P.2d at 924. *See* R.Evid. 404(b), 17A A.R.S. In the instant case, however, specific instances of prior bad acts of the victim were not relevant to defendant's "I didn't do it" theory.

Furthermore, "proving character through specific acts is not permissible unless the evidence is otherwise properly admitted under Rule 405(b), where the victim's character is an 'essential element' of the defense." *State v. Williams,* 141 Ariz. 127, 130, 685 P.2d 764, 767 (App.1984); R.Evid. 405(b), 17A A.R.S. Here, the victim's character was not an "essential ele-

ment" of the defense. The trial judge properly refused to allow the evidence under R.Evid. 404(a)(2), 405(b), 17A A.R.S.

## II.

### EFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends that he received inadequate representation of counsel. Specifically, defendant argues that his counsel erred by failing to raise the issues of self-defense and intoxication. Accordingly, he argues that if he had claimed self-defense, evidence of the victim's prior convictions and arrests would have been admissible to prove that the victim was the aggressor. These omissions in his defense, defendant asserts, were prejudicial and resulted in his being convicted of first degree murder, rather than of a lesser offense.

■ In order to prevail on an ineffective assistance-of-counsel claim, a defendant must establish that his counsel's performance was deficient, *State v. Nash,* 143 Ariz. 392, 397, 694 P.2d 222, 227, *cert. denied,* 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985), and that his counsel's deficient performance prejudiced his defense, *State v. Lee,* 142 Ariz. 210, 213–14, 689 P.2d 153, 156–57 (1984). *Accord Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ In order to show that counsel's performance was deficient, defendant must specify the acts or omissions of counsel that allegedly constitute ineffective assistance. The evidence must overcome a presumption that the challenged action was sound trial strategy under the circumstances. *State v. Fisher,* 152 Ariz. 116, 118, 730 P.2d 825, 827 (1986) *citing Strickland,* 466 U.S. at 689, 104 S.Ct. at 2066, 80 L.Ed.2d at 694–95. After examining all the circumstances existing at the time of counsel's actions, we will find deficient representation only where counsel's performance fell below objective standards of reasonable representation measured by prevailing professional norms. *Nash,* 143 Ariz. at 397, 694 P.2d at 227, *citing Strickland,* 466

U.S. at 688, 104 S.Ct. at 2065–66, 80 L.Ed.2d at 693. Proof of ineffectiveness must be to a demonstrable reality rather than a matter of speculation. *State v. McDaniel,* 136 Ariz. 188, 198, 665 P.2d 70, 80 (1983). It is noted that in the instant case, we do not have the benefit of a post-conviction (Rule 32) hearing as to the ineffectiveness of defense counsel. Since a determination as to effectiveness of counsel must be made from the record, *State v. Bush,* 148 Ariz. 325, 328, 714 P.2d 818, 821 (1986), the defendant in most cases will have difficulty establishing the level-of-performance prong from an unsupplemented record because it will seldom show why the trial attorney did or failed to do something. In such a situation, the "strong presumption" requires the court to conclude that counsel's actions were choices made for strategic or tactical reasons. *Strickland v. Washington, supra.*

### a. *Issue of self-defense*

■ Defendant first contends that his trial counsel was inadequate in failing to introduce the issue of self defense. Defendant ignores that his own, sworn testimony precluded his counsel from raising such a defense.

The record indicates that counsel prepared a defense based on her conversations with defendant. This defense corresponds to the account of the murder given by defendant at trial. At sentencing, defense counsel told the trial court that the reason she chose the "I didn't do it" defense was because defendant had told her that he was not present at the murder.

Defendant testified at trial that he did not do the killing, was not present at the murder, did not have any arguments with the victim, did not have a gun in his possession, and did not visit Ms. Arndt's apartment. At sentencing, he stated:

MR. SANTANNA: Your Honor, honestly, I must tell you that I am—I do not feel satisfied, not necessarily because I've been convicted. I don't feel satisfied because for the first reason that I did not commit the offense.

In *Strickland v. Washington, supra,* the Court addressed the issue of strategic decisions:

The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.... In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.

466 U.S. at 690–92, 104 S.Ct. at 2066–67, 80 L.Ed.2d at 695–96. A court on appeal should give great deference, therefore, to choices that are made under the explicit direction of the client. *Mulligan v. Kemp,* 771 F.2d 1436, 1441 (11th Cir.1985). If counsel "is commanded by his client to present a certain defense, and if he does thoroughly explain the potential problems with the suggested approach, then his ultimate decision to follow the client's will may not be lightly disturbed." *Id.* at 1442. We find no error.

### b. *Intoxication*

■ Defendant contends that his counsel was also inadequate in failing to raise the issue of intoxication. We do not agree.

Voluntary intoxication is relevant as to a defendant's lack of intent. "When determining criminal responsibility, the jury may consider voluntary intoxication not as a defense but as it relates to the ability to form specific intent." *State v. Laffoon,* 125 Ariz. 484, 486, 610 P.2d 1045, 1048 (1980). The issue of intoxication is, however, irrelevant to a "I didn't do it" defense. Indeed, if defense counsel had argued inability to form specific intent, she would have contradicted and undermined defendant's version of the evening's events. We find no error.

We have reviewed the record for fundamental error. A.R.S. § 13-4035; *Anders v.*

*California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); *State v. Leon,* 104 Ariz. 297, 451 P.2d 878 (1969). We find no error. Affirmed.

GORDON, C.J., FELDMAN, V.C.J., and HOLOHAN, J., concur.