770 P.2d 313

**STATE of Arizona, Appellee,**

v.

**Antonio Escarsega VALDEZ, Appellant.**

No. CR–87–0355–AP.

Supreme Court of Arizona, En Banc.

Jan. 31, 1989.

Robert K. Corbin, Atty. Gen. by William
J. Schafer III and Diane M. Ramsey, Asst.
Attys. Gen., Phoenix, for appellee.

Harold L. Higgins, Jr., Pima County Public Defender, and Charles L. Weninger, Tucson, for appellant.

FELDMAN, Vice Chief Justice [1].

## I. FACTS

Defendant, Antonio E. Valdez, appeals from a jury verdict and judgment of guilty to aggravated assault, a dangerous offense committed while he was on parole for a prior felony conviction. A.R.S. § 13–1204(A)(2) and (B). Defendant was sentenced to a term of twenty-five years to life to be served consecutively to a sentence imposed in another matter. A.R.S. § 13–604.02(A). We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. §§ 13–4031 and –4033.

## II. ISSUES

We must answer the following questions on appeal:

1. Was the evidence sufficient to support the conviction?

2. Was the defendant's right to confrontation violated?

3. Did the prosecutor make improper and prejudicial comments in closing argument?

4. Was defendant's counsel ineffective?

## III. FACTS

On 14 March 1987, Danny Butierrez held a going-away party at the Tucson Inn for his long-time friend, Thomas Griggs. Present at the party besides Butierrez and Griggs were Jennifer Almli, Butierrez' girl friend; the defendant, a friend and co-worker of Butierrez; and William Davis, the victim. At some time during the eve-

1. This opinion was originally assigned to and drafted by Justice Cameron. All members of the court agreed with sections I through V of the opinion, but none concurred in section VI. In accordance with this court's internal operating procedures, the Chief Justice reassigned the opinion, designating Vice Chief Justice Feldman to speak for a majority of the court on sections VI and VII. Often, in such a situation, the person to whom the case has been reassigned will rewrite the entire opinion. Vice Chief Justice Feldman believed that no purpose would be served and considerable effort would be wasted in rewriting the entire opinion. Instead, he adopted Justice Cameron's proposed drafts of sections I through V, and authored sections VI and VII dealing with prosecutorial misconduct, ineffective assistance of counsel, and the opinion's conclusion.

ning after everyone had been drinking heavily, the defendant and Davis got into an argument over what defendant perceived as Davis' advances towards Almli. Neither Almli nor her boyfriend, Butierrez, was concerned about this, but the defendant took it upon himself to confront Davis by demanding that Davis leave. When Davis refused, defendant grabbed him and held a knife to his throat producing a small cut on his neck. Davis then went out of the room followed by defendant. The defendant soon returned and cut Griggs on his finger. Defendant gave his knife to Butierrez, who gave it to Griggs, who threw it across the road.

Meanwhile, Davis had called the police. The defendant ran when two policemen arrived. One officer pursued the defendant while the other spoke to Griggs. They retrieved the knife which revealed no recognizable fingerprints. Defendant was apprehended in the bathroom of one of the hotel rooms. The officers described Davis as upset and excited. Butierrez and Almli testified at trial, and both were impeached with prior inconsistent statements. Butierrez had made the prior statements to exonerate the defendant, and Almli had done so to avoid testifying at trial. Almli ultimately confirmed Griggs' version of the altercation. She testified that she thought defendant was trying to scare Davis.

The defendant took the stand and testified on his own behalf. He claimed he grabbed Davis only after Davis hit him in the eye. He denied pulling a knife on Davis and denied injuring either Davis or Griggs. From a jury verdict and judgment of guilt, defendant appeals. We affirm.

## IV. INSUFFICIENCY OF THE EVIDENCE

Defendant first contends that the state failed to prove an essential element of the offense, namely that the victim was reasonably apprehensive of imminent physical injury.

To be guilty of aggravated assault with a deadly weapon,

the defendant need only intentionally act using a deadly weapon or dangerous in-

strument so that the victim is placed in reasonable apprehension of imminent physical injury.

*State v. Morgan,* 128 Ariz. 362, 367, 625 P.2d 951, 956 (Ct.App.1981), *vacated on other grounds, In re Pima County Juvenile Action No. 5–78539–2,* 143 Ariz. 254, 693 P.2d 909 (1984); *see also State v. Torres,* 156 Ariz. 150, 153, 750 P.2d 908, 911 (Ct.App.1988) (focus under A.R.S. § 13–1204 is "whether a weapon is deadly and in the immediate control of the criminal, not on the victim's perception of it").

Defendant contends, however, that without the victim's testimony that he was placed in "reasonable apprehension of imminent physical injury," a conviction may not be obtained. We do not agree.

When fear or apprehension are elements of an offense, testimony of the victim that he was actually afraid or apprehensive is not required; that element of the crime can be established by circumstantial evidence.

*State v. Angle,* 149 Ariz. 499, 504, 720 P.2d 100, 105 (Ct.App.1985), *vacated in part on other grounds,* 149 Ariz. 478, 720 P.2d 79 (1986).

The circumstantial evidence herein is more than sufficient to show the required fear. In fact, it would stretch our credibility to the breaking point were we to find that a knife held to the throat followed by a cut on the neck did not produce fear and apprehension on the victim's part. We find no error.

## V. RIGHT TO CONFRONTATION

At trial, Davis, the victim, did not testify. Over defendant's objections, the trial court allowed an investigator to testify that he had been trying unsuccessfully to serve Davis with a subpoena for four months prior to trial. The investigator asserted that Davis was not present to testify at trial because he was unaware of the trial date because he had not been served with a subpoena.

At trial the following occurred before the judge:

BY MR. LAURITZEN: [for the State] Well, and the question I think both of us want answered in a different way is whether or not my putting McDonald on and asking him what efforts or asking him whether he made efforts to find Davis opens the door to the fact that one of the primary ways that were used to find Mr. Davis was following down the leads that were created by his arrest the day after.

I mean that it seems to me is not really probative of anything and clearly prejudicial now we get to hear about an arrest.

THE COURT: Is Davis an absconder from some case?

MR. LAURITZEN: No.

MR. ACUNA: [for the Defendant] He was arrested and then the charges were never completely pursued.

MR. LAURITZEN: Case was never issued. Then the case was dismissed after an interim complaint was filed, I assume. I'm not even sure they got to the point of an interim complaint. All I know is there was an arrest and case was dismissed.

MR ACUNA: Mr. McDonald indicated in his prior testimony in this case he had gone through the police reports of the following arrests and checked the address and names given on the reports, and officers reports and so forth.

And his testimony would probably clearly show the jury that he followed up leads that resulted from the arrest the following day.

And I think what Mr. Lauritzen says, well, I don't want the fact known he was arrested the next day—

THE COURT: What was he arrested for, I forgot.

MR. LAURITZEN: Theft of a vehicle from his employer. If you recall the testimony, the employer—that led McDonald to the employer and the employer didn't press charges. I think that's why the thing was dismissed.

Reporter's Transcript (RT), Oct. 6, 1987, at 80–81.

■ Defendant first contends that the failure of the state to present the victim violated the defendant's right under the sixth amendment of the United States Constitution and article 2, § 24 of the Arizona Constitution. These provisions guarantee criminal defendants the right to confront their accusers. *State v. Robinson*, 153 Ariz. 191, 203, 735 P.2d 801, 813 (1987). We do not agree with the defendant that the victim had to be present.

As noted by the Minnesota Supreme Court:

> The victim in this case left the state and returned to Alabama, where he was from, shortly after he was released from the hospital, and he could not be located for trial. However, two witnesses, who had never met either defendant or the victim before the day in question, both gave testimony which sufficiently supported the jury's finding that defendant stabbed the victim with a screwdriver and that the attack was not in self-defense. The state did not introduce any hearsay statement of the victim nor was it responsible for the victim's being unavailable, and therefore no Sixth Amendment issue is raised. There is no reason to believe that the victim's testimony would have been favorable to defendant and defendant's contention that he was prejudiced by the victim's absence is not borne out by our examination of the record. In fact, defense counsel attempted to use the victim's absence to defendant's advantage in closing argument.

*State v. Salazar*, 289 N.W.2d 753, 754–55 (Minn.1980); *see also State v. Rivet*, 291 N.W.2d 401, 402 (Minn.1980).

There is no evidence that the state was responsible for the victim's absence, and the evidence indicates that the state made a good faith effort to find the victim. We find no sixth amendment violation of defendant's right to confrontation.

■ Next, the defendant claims that the court erred in prohibiting defendant from showing that the victim had been arrested. We do not agree. Had the victim appeared, he could have been impeached by a prior conviction, but not by a prior arrest

which resulted in a dismissal. Defendant could not have brought the fact of the arrest to the jury's attention had the victim been present and could not do any differently in the victim's absence. We find no error.

## VI. PROSECUTORIAL MISCONDUCT

■ Defendant next contends that the prosecutor was guilty of improper closing remarks. During closing argument defense counsel stated:

> And when you compare the testimony with the law and instructions given to you, I'm confident you'll come back with a verdict of not guilty at least as to the aggravated assault.
>
> I can almost concede a much easier task of finding the lesser-included offense. But as to the aggravated assault, it might have been a little different if Mr. Griggs were here—Mr. Davis were here, might have been a whole lot easier for the State to prove their case. But as it is now, he's not here and they've not done it.

RT, Oct. 8, 1987, at 371.

In response, the prosecutor stated:

> I want to first address the almost concession that Mr. Acuna almost made at the end of his remarks. And that was that he almost conceded that you could find the lesser-included offense.
>
> I suggest to you folks he wants you to find the lesser-included offense because he wants you to plea bargain. *He wants you to give him the plea bargain the State wouldn't,* and that's not your job.

*Id.* at 373 (emphasis added).

Thus, the prosecutor's remarks indicated to the jury that defendant had sought a plea bargain from the state, a bargain the state refused. A lay person might think that the only reason for a defendant to seek plea discussions was that defendant knew he was guilty or at least feared that he had a weak case and, therefore, sought a plea bargain rather than face trial.

The prosecutor's comments were impermissible for three reasons. First, the evidence at trial did not support his comments. Second, they were irrelevant to any issue being tried. Third, and most importantly, a court rule, which forbids evidence of any "plea discussion" or "resulting agreement," prohibits the comments. Rule 17.4(f), Ariz.R.Crim.P., 17 A.R.S.

Thus, even assuming that the prosecutor might properly have argued that the jury should not plea bargain with this defendant by convicting him of a lesser offense,[2] any intimation that this defendant unsuccessfully sought a plea bargain from the state is still grossly improper. Indeed, such a comment not only calls the jury's attention to inadmissible and improper matters, but also creates a serious danger of prejudice because it tends to raise in the jurors' mind an inference that the defendant acknowledged guilt. The test for prejudicial error is whether "there was reasonable probability that the verdict might have been affected by the error." *State v. Schossow,* 145 Ariz. 504, 508, 703 P.2d 448, 452 (1985). Here, the prosecutor's comment meets that test.

■ However, the record shows that defense counsel did not object to the prosecutor's remark. Ordinarily, the failure to object waives the error. *State v. Kreps,* 146 Ariz. 446, 450, 706 P.2d 1213, 1217 (1985). The error here was one the trial court could easily have cured at or near the time of final argument, if defense counsel made an objection. An objection would have *required* the trial court either to declare a mistrial or to instruct the jury that it not only should disregard the comment but that the comment was unjustified by the facts or the evidence and was merely an inadvertent, careless remark. This might, indeed, have "gilded the lily," but would have at least protected defendant's rights to a fair trial. By not objecting, defendant failed to require the court to correct the error and, in our view, has waived that error. Defendant cannot take his chances on a favorable verdict, reserving the "hole card" of a later appeal on an

---

2. Given Rule 17.4, we do not endorse any mention of plea bargains in final arguments.

evidentiary matter that was curable at trial, and then seek appellate reversal from an unfavorable verdict. *See* M. UDALL & J. LIVERMORE, ARIZONA PRACTICE: THE LAW OF EVIDENCE § 12 at 14–15 (2d ed. 1982).

An exception to the waiver principle exists in the doctrine of fundamental error. *Kreps,* 146 Ariz. at 450, 706 P.2d at 1217. Fundamental error is error that goes to the heart of the defendant's case or takes from him a right essential to his defense. *State v. King,* 158 Ariz. 419, 424, 763 P.2d 239, 244 (1988) (error in defining the terms used in instructing the jury on the quantum of proof necessary for a defendant to establish the insanity defense is fundamental). The error here is quite different than that found in *King* because it pertains only to an isolated evidentiary matter raised in final argument. The improper comment was not fundamental error.

▪ Given the express prohibitions of Rule 17.4(f), let alone the lack of relevance and evidentiary support for the prosecutor's comment, defendant argues that this court should reverse defendant's conviction on policy grounds as a deterrent to prosecutorial misconduct. Assuming, without deciding, that the comment in question was knowingly and intentionally made, it might certainly have been professional misconduct. *See* Rule 42, ER 3.4(c) and (e), 3.5(c), Ariz.R.Sup.Ct., 17A A.R.S. (1988); former Rule 29(a), DR 1–102(A)(5), 7–106(C)(1) and (7), Ariz.R.Sup.Ct., 17A A.R.S. (1973); ABA, *Standards For Criminal Justice— The Prosecution Function,* §§ 3–5.8 and 5.9 (and commentary thereto).

However, we are not prone to reverse convictions solely because the officers of the law have acted improperly. *See generally State v. Bolt,* 142 Ariz. 260, 689 P.2d 519 (1984). Where there has been misconduct but no error, or the error is harmless, or when a defendant has failed to object to a non-fundamental error, the proper remedy is generally not reversal but affirmance followed by appropriate sanctions against the offending actor. *Bolt,* 142 Ariz. at 267–68, 689 P.2d at 526–27; *but cf. Pool v. State,* 139 Ariz. 98, 109, 677 P.2d 261, 272

(1984) (double jeopardy clause required dismissal of charges for knowing and intentional prosecutorial misconduct).

Although we have no direct authority over law enforcement officers, except as to their courtroom comportment and actions, we do have direct authority over the conduct of lawyers, both in and out of the courtroom. Accordingly, in cases where there has been misconduct of either the prosecutor or defense counsel, but reversal is not required, the proper remedy will be affirmance, followed by institution of bar disciplinary proceedings against the offending lawyer, if such proceedings are warranted.

## VII. EFFECTIVE ASSISTANCE OF COUNSEL

▪ Defendant argues that defense counsel's failure to object to the prosecutor's plea bargain comment constituted ineffective assistance of counsel so that reversal is required. We disagree.

Generally, this court is reluctant to decide claims of ineffective assistance in advance of an evidentiary hearing to determine the reasons for counsel's actions or inactions on any particular point. Here, for instance, it is possible that defense counsel was aware that the prosecutor's plea bargain comment was improper but decided to take no action for any one of several reasons. He might have been satisfied with the composition of the jury or the progress of the trial and therefore unwilling to move for a mistrial. Counsel may have thought that a curing instruction might highlight the improper comment and cause the jury to think carefully about a few words that might not have carried much impact given the circumstances under which the words were spoken. These and other considerations might lead competent defense counsel to the conclusion that it would be better not to object to the prosecutor's comment.

▪ Defense counsel's determinations of trial strategy, even if later proven unsuccessful, are not ineffective assistance of counsel. *State v. Santanna,* 153 Ariz. 147,

149, 735 P.2d 757, 759 (1987) (citing *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984)). Nor is every failure to object to an improper question, exhibit, or argument worthy of being called ineffective assistance of counsel. Even the best trial lawyer makes many mistakes in every trial. Defendants are not guaranteed perfect counsel, only competent counsel. Thus, the court can determine ineffective assistance of counsel issues only after it has learned of the reasons for counsel's actions or inactions and has examined the record as a whole to determine whether the defendant received what the adversary system requires. Thus, here, as in other cases, if the defendant wishes to raise an ineffective assistance of counsel issue, he should ordinarily begin someplace other than in this court. *See State v. Guerrero,* 159 Ariz. 568, 569, 769 P.2d 1014, 1015 (1989).

▪ As a general matter, we recommend that when a defendant wishes to raise the question of ineffective assistance during the pendency of his appeal, he should file the proper petition under Rule 32, Ariz.R. Crim.P., 17 A.R.S., in the trial court and seek an order from the appellate court suspending the appeal. The trial court should then hold an evidentiary hearing and make its ruling. Afterward, a defendant should seek to consolidate the post-conviction proceedings with the direct appeal. *See* Rule 31.4, Ariz.R.Crim.P., 17 A.R.S.

Pursuant to A.R.S. § 13–4035, we have reviewed the record for fundamental error and find none.

## VIII. CONCLUSION

We conclude that the evidence sufficiently supported the verdict, that defendant's right to confrontation was not violated, and that by failing to object, defendant waived the error relating to the prosecutor's comment on plea bargaining. We affirm the judgment without prejudice to any further post-conviction proceedings defendant might institute. The clerk of court will forward a copy of this opinion to the disciplinary department of the State Bar of Arizona for consideration of the allegation of the prosecutor's professional misconduct.

GORDON, C.J., and MOELLER, J., concur.

Justice William A. Holohan retired before the decision of this case; Justice Robert J. Corcoran did not participate in the determination of this case.

CAMERON, Justice, dissenting.

I regret that I must dissent from the portion of the opinion of the court contained in Section VI. Our rules state:

**Disclosure and Confidentiality.** When a plea agreement or any term thereof is accepted, the agreement or such term shall become part of the record. However, if no agreement is reached, or if the agreement is revoked, rejected by the court, or withdrawn or if the judgment is later vacated or reversed, neither the plea discussion nor any resulting agreement, plea or judgment, nor statements made at a hearing on the plea, shall be admissible against the defendant in any criminal or civil action or administrative proceeding.

Ariz.R.Crim.P. 17.4(f), 17 A.R.S.

In determining whether remarks made by counsel in criminal cases are so objectionable as to cause a reversal of the case, we have stated the rule to be:

Do the remarks call to the attention of the jurors matters which they would not be justified in considering in determining their verdict, and were they, under the circumstances of the particular case, probably influenced by these remarks.

*Sullivan v. State,* 47 Ariz. 224, 238, 55 P.2d 312, 317 (1936), *quoted with approval in State v. Landrum,* 112 Ariz. 555, 561, 544 P.2d 664, 670 (1976). The prosecutor's remarks clearly brought to the jury's attention matters proscribed by rule. The remarks were particularly egregious because the jury was considering verdicts of aggravated and simple assault. If the jury believed that the defendant had tried to make a plea bargain with the state, this belief could well have caused the scale to be tipped in favor of aggravated as opposed to

simple assault. The remarks called to the jurors' attention were matters they should not have considered, and we cannot say they were not influenced by the statements. *See Landrum*, 112 Ariz. at 561, 544 P.2d at 664. This was prejudicial error.

I also believe that these remarks were fundamental error. I agree with the majority's statement that fundamental error is error that goes to the heart of defendant's case or takes from him a right essential to his defense. *State v. King*, 158 Ariz. 419, 424, 763 P.2d 239, 244 (1988). I believe that these remarks are just as damaging as remarks designed to call to the jury's attention the fact that defendant did not take the stand and testify. Considering the facts of this case they may be of even greater damage to the defendant.

Because of the prosecutor's statement regarding the plea bargain, I would reverse and remand for a new trial.