NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MILTON CHARLES EATON, JR., *Appellant.*

No. 1 CA-CR 16-0799
FILED 10-3-2017

Appeal from the Superior Court in Maricopa County
No. CR2016-103083-001 DT
The Honorable Carolyn K. Passamonte, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Adele G. Ponce
*Counsel for Appellee*

Bain & Lauritano, PLC, Glendale
By Amy E. Bain
*Counsel for Appellant*

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Diane M. Johnsen and Judge Maria Elena Cruz joined.

**W I N T H R O P**, Presiding Judge:

¶1 Milton Charles Eaton, Jr. ("Appellant") appeals his conviction and sentence for aggravated assault. Appellant argues (1) the prosecutor committed misconduct by commenting on plea negotiations during closing argument, resulting in fundamental, reversible error, and (2) the trial court relied on insufficient evidence to find Appellant had four prior felony convictions for sentencing purposes. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY[1]

¶2 In the early morning of January 21, 2016, Appellant entered a fast food restaurant, sat down at a booth with two or three other persons, and "started blasting [music from a radio] real loud." Another customer ("the victim") asked the group to turn down the volume, but Appellant expressly refused to do so. The victim approached the restaurant counter and asked the manager to "go over and ask them to please turn the radio down." The manager stated he would "be over there in a second," and the victim returned to his booth. Appellant, who appeared "angry," stood up, walked to within a few feet of the victim, pulled out a "big, long hunting knife," and pointed it at the victim, causing the victim to fear for his life. The manager called the police and told Appellant to leave. As Appellant left the restaurant, he threatened to "hurt" the victim and manager the next time he saw them.

¶3 Responding to "a call of a subject threatening another subject with a knife," Glendale police officers Solomon and Haney arrived a few minutes later. After obtaining a description of the perpetrator, Officer Solomon drove to a nearby liquor store "where a lot of people in the area go hang out," and found Appellant, who matched the description provided by the manager. As Officer Solomon placed Appellant in handcuffs and advised him that he was being detained, Appellant stated that "[t]his was about something that happened at [the restaurant]."

¶4 In separate one-on-one show-ups, both the victim and the manager positively identified Appellant as the perpetrator. Officer Solomon then searched Appellant and found a "speaker wallet" on a chain and a long knife in Appellant's left boot. After being advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), Appellant told Officer

---

[1] We view the facts in the light most favorable to sustaining the verdict and resolve all reasonable inferences against Appellant. *See State v. Kiper*, 181 Ariz. 62, 64 (App. 1994).

Haney that the victim "had disrespected him in the [restaurant] about his music, and he wasn't going to have somebody speak to him that way."

**¶5**          At trial, the jury found Appellant guilty of one count of aggravated assault, a class three felony.[2]   The trial court found that Appellant had four historical prior felony convictions for sentencing purposes, sentenced Appellant to the presumptive term of 11.25 years' imprisonment in the Arizona Department of Corrections, and credited Appellant for 289 days of presentence incarceration.

**¶6**          We have jurisdiction over Appellant's timely appeal.  *See* Ariz. Const. art. 6, § 9; Ariz. Rev. Stat. ("A.R.S.") §§ 12-120.21(A)(1) (2016), 13-4031 (2010), 13-4033(A) (2010).

## ANALYSIS

*I.      Alleged Prosecutorial Misconduct*

**¶7**          Appellant argues the prosecutor committed misconduct by commenting on plea bargaining at the beginning of closing argument.

**¶8**          In his opening statement to the jury, defense counsel stated, "I agree with the prosecutor that an appropriate verdict would be guilt, but guilt to disorderly conduct and not to aggravated assault."   At the conclusion of the trial, without objection, the prosecutor began his closing argument as follows:

> In his opening remarks to you, defense counsel told you that he agreed that the defendant was guilty of something arising out of this incident, but that he believed it was a disorderly conduct rather than an aggravated assault.
>
> You might find yourself wondering on some level, Well, I have the defendant admitting to being in the [restaurant], admitting to approaching the victim, admitting pulling a knife, admitting why he did it.  I have a surveillance video that captures at least the lead up to the incident from a different angle, an independent witness that indicates that the defendant extended the arm and pointed the knife at the

---

[2]      The trial court had also instructed the jury on disorderly conduct as a lesser-included offense.

victim. With all of that, why am I here? Why do we need a jury? Why do we have a trial?

You might think, Well, don't cases like that usually resolve by plea agreement if everybody's basically on the same page? And there are two answers to that question in this case.

The first is that you'll be asked on some level to decide whether what has happened is, as defense counsel suggested to you, a lesser offense, a disorderly conduct that the defendant did, or whether it's as the State has charged him, that he committed an aggravated assault. That's the first answer.

The second is that the decision of whether to take a plea or whether to do a trial is always up to the defendant. The reasons are his alone and they're irrelevant. The fact that there is a trial is no comment on the strength of the evidence, the straightforwardness of the case. Strong cases and weak ones go to trial.

And so just as in your jury instructions, the Court is telling you that the existence of a charge is not evidence, which it is not, the existence of a trial, likewise, is no comment on the strength of the case.

What we ask you to do is to have a look at what you've been presented; the testimony from each of the witnesses, the photographs, the recordings, the documentary evidence, the notes that you've taken. We ask you to take those things and then answer a few questions. Am I firmly convinced that the defendant committed an aggravated assault? If not, or if I can't make up my mind as to that question, am I firmly convinced that he simply committed a disorderly conduct?

¶9 In general, prosecutors are afforded wide latitude in presenting their closing arguments to the jury. *State v. Jones*, 197 Ariz. 290, 305, ¶ 37 (2000). However, evidence related to plea negotiations is generally inadmissible against a defendant. *See* Ariz. R. Evid. 410; *see also* Ariz. R. Crim. P. ("Rule") 17.4(f) ("The admissibility or inadmissibility of a plea, a plea discussion, and any related statement is governed by Arizona Rule of Evidence 410."). Accordingly, our supreme court has stated that, given Rule 17.4, it does "not endorse any mention of plea bargains in final

arguments." *State v. Valdez*, 160 Ariz. 9, 13 n.2 (1989), *overruled on other grounds by Krone v. Hotham*, 181 Ariz. 364, 366-67 (1995).

**¶10** "To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that '(1) misconduct is indeed present; and (2) a reasonable likelihood exists that the misconduct could have affected the jury's verdict, thereby denying [the] defendant a fair trial.'" *State v. Moody*, 208 Ariz. 424, 459, ¶ 145 (2004) (citation omitted); *accord State v. Anderson*, 210 Ariz. 327, 340, ¶ 45 (2005). "[A] defendant must demonstrate that the prosecutor's misconduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *State v. Hughes*, 193 Ariz. 72, 79, ¶ 26 (1998) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *see also State v. Lee*, 189 Ariz. 608, 616 (1997) (stating that, to justify reversal, the misconduct "must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial'" (citations omitted)).

**¶11** Because Appellant did not object to the prosecutor's argument, he has waived his argument absent fundamental, prejudicial error. *See State v. Henderson*, 210 Ariz. 561, 567-69, ¶¶ 19-26 (2005). To establish prejudice, Appellant must show that, absent the improper remarks, a reasonable jury could have reached a different result. *State v. Ramos*, 235 Ariz. 230, 236, ¶ 18 (App. 2014).

**¶12** Appellant relies on *Valdez* to argue the prosecutor's comments in this case were improper. In *Valdez*, the prosecutor referred to plea negotiations between the State and the defendant when he remarked, "I suggest to you folks [defense counsel] wants you to find the lesser-included offense because he wants you to plea bargain. *He wants you to give him the plea bargain the State wouldn't*, and that's not your job." 160 Ariz. at 13 (emphasis added in *Valdez*). Noting that the prosecutor's remarks indicated to the jury that the defendant had sought a plea bargain from the State, a bargain the State had obviously refused, and a lay person might think the defendant had sought plea discussions because he knew he was guilty or at least feared he had a weak case, our supreme court found the prosecutor's remarks improper for three reasons: (1) they were unsupported by the evidence, (2) they were irrelevant to any issue being tried, and (3) they violated Rule 17.4(f). *Id.* However, because defense counsel had not objected and allowed the court to cure the error, fundamental error review applied, and the court found the error was not fundamental "because it pertain[ed] only to an isolated evidentiary matter raised in final argument." *Id.* at 13-14.

¶13　　　　In *Valdez*, the prosecutor specifically told the jury the State had denied the defendant's request for a plea agreement. In this case, the remarks of the prosecutor were less direct; nonetheless, they were also improper. The prosecutor broached the subject of plea bargaining when he raised the question, "You might think, Well, don't cases like that usually resolve by plea agreement if everybody's basically on the same page?" and answered that question in part by advising the jury that "the decision of whether to take a plea or whether to do a trial is always up to the defendant." However, the decision to accept a plea agreement is up to the defendant only *if* the State has made an offer. Accordingly, the prosecutor's remarks intimated that the State had offered a plea deal, but Appellant had ultimately turned down the offer, perhaps after further negotiations, and chosen instead to go to trial. Any intimation that a defendant has unsuccessfully sought a plea bargain from the State is improper. *Id.* at 13.

¶14　　　　As we have previously recognized, however, the prosecutor's comments in this case were not objected to and are thus subject to fundamental error review. Further, like the prosecutor's remarks in *Valdez*, the prosecutor's comments here were brief and pertained only to an isolated matter raised in final argument.[3] Finally, even were we to find fundamental error, no reversible error occurred given the overwhelming evidence supporting Appellant's conviction. The undisputed evidence indicated—and Appellant admitted to police officers—that he was at the restaurant, had a knife, confronted the victim, and pulled out the knife. The only material factual question raised by Appellant was whether he held the knife down by his side or raised it as he confronted the victim. Both the victim and the manager testified that Appellant pointed the knife directly at the victim. On this record, the prosecutor's isolated comments in closing argument were not reversible error.

　　　　II.　　　*Prior Convictions*

¶15　　　　Appellant next argues the trial court erred in finding the State proved his out-of-state prior convictions through evidence matching only his name and date of birth.

¶16　　　　The State is required to "submit positive identification establishing that the accused is the same person who previously was

---

[3]　　　　Viewed in context, it is clear the prosecutor was quite clumsily arguing that, despite Appellant's insistence he was guilty only of disorderly conduct, the jury should render a verdict on the aggravated assault charge and should *not* draw inferences based on the lack of a plea agreement.

convicted, as well as evidence of the conviction itself." *State v. Cons*, 208 Ariz. 409, 415, ¶ 16 (App. 2004). "[P]rior convictions for sentence enhancement purposes must be established by clear and convincing evidence." *Id.* at ¶ 15. The State is not required to provide a certified copy of a prior conviction containing a photograph or a fingerprint if other evidence sufficiently connects the defendant with the prior conviction. *See State v. Van Adams*, 194 Ariz. 408, 419, ¶¶ 35-37 (1999). In the absence of evidence casting doubt on the identification, certified prior convictions containing both the defendant's name and date of birth are sufficient to prove identity and connect the defendant to the prior conviction. *See State v. Kinney*, 225 Ariz. 550, 558, ¶ 26 (App. 2010). The trial court has considerable discretion in determining the admissibility of evidence, and we review such decisions for an abuse of that discretion. *State v. Amaya-Ruiz*, 166 Ariz. 152, 167 (1990).

¶17 At the trial on Appellant's prior convictions, the State presented four certified documents (Exhibits 1-4) of prior felony convictions from Contra Costa County, California, dating from 2001 to 2013, which the court admitted into evidence. Without objection, the court found the documents were self-authenticating certified copies of abstracts and convictions from California. The prosecutor then argued,

> Each of the four certified documents indicates that it refers to an individual named Milton Charles Eaton, with the exception of Exhibit 1, which identifies a Milton C. Eaton. But they all refer to an individual with a date of birth February 14th of 1955, which matches both the full name of the individual who appeared for trial in this matter, Milton Charles Eaton, Jr., and the date of birth of the man in front of you, February 14th, 1955, as he's announced to us on multiple occasions.

The court found the State had proved by clear and convincing evidence that the documents were those of Appellant.

¶18 In this case, each of the documents contains Appellant's first name, last name, middle initial, and birthdate.[4] Additionally, two of the

---

[4] Appellant argues for the first time in his reply brief that his full name is Milton Charles Eaton, *Jr.* (emphasis added) and, accordingly, his full name does not match that on the documents, which do not include "Jr." as a designation. Appellant did not object on this basis in the trial court or

four documents (Exhibits 3 and 4, which relate to Appellant's most recent prior felony offenses) contain a Social Security number that matches Appellant's Social Security number as provided in the record on the court information sheet.[5]  Moreover, nothing in the record causes us to question that Appellant is the person referred to in Exhibits 1 through 4.  Appellant has never claimed, either in the trial court or on appeal, that he is not the person in the documents, and he has not argued, much less demonstrated, that fundamental, prejudicial error has occurred.  In the absence of any evidence casting doubt on the identification, we will not overturn the trial court's determination that the State proved the prior convictions.  *See Kinney*, 225 Ariz. at 558, ¶ 26.  The trial court did not abuse its discretion in concluding that sufficient evidence established Appellant's prior convictions.

**CONCLUSION**

¶**19**　　　　Appellant's conviction and sentence are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

raise this issue in his opening brief, and thus has waived this argument absent fundamental, prejudicial error, which does not exist here.

5　　　　Although the trial court apparently did not use the Social Security numbers to confirm Appellant's identity, they are a part of the record, and we can take judicial notice of them.  *See State v. McGuire*, 124 Ariz. 64, 66 (App. 1978).  Also, under A.R.S. § 13-703(C) (Supp. 2016), only two historical prior felony convictions are necessary for a defendant to be sentenced as a Category 3 offender, the basis for the trial court's imposition of sentence on Appellant.  Further, the trial court did not use prior convictions to aggravate Appellant's sentence, as he was sentenced to the presumptive term.